141 F.Supp.2d 661 (2001)
Nathan Lynn ROSE, Petitioner,
v.
Gary L. JOHNSON, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.
No. CIV. A. H-99-2535.
United States District Court, S.D. Texas.
March 26, 2001.
*662 *663 *664 *665 *666 *667 *668 *669 *670 *671 *672 *673 *674 *675 *676 *677 Nathan L Rose, Huntsville, Pro se.
Woodson Erich Dryden, Office of Atty General, Austin, TX, for Gary Johnson, Director, TDCJ, respondent.

MEMORANDUM AND ORDER
CRONE, United States Magistrate Judge.

I. Introduction

Petitioner Nathan Lynn Rose ("Rose") challenges his 1995 conviction for aggravated robbery and forty-year sentence of imprisonment. Having reviewed the pending motion, the submissions of the parties, the state court record, and the applicable law, the court is of the opinion that Respondent Gary L. Johnson's ("Johnson") Motion for Summary Judgment (# 13) should be granted, Rose's Amended Petition for Writ of Habeas Corpus (# 4) and Motion for Summary Judgment (# 14) should be denied, and a certificate of appealability should not be issued.

II. Procedural History

On August 17, 1995, a jury convicted Rose of the aggravated robbery of Mary Aldape ("Aldape"), which occurred on March 30, 1993. See State v. Rose, No. 662269 (183d Dist. Ct., Harris County, Tex., Aug. 17, 1995). On November 13, 1995, after Rose pleaded true to prior convictions for possession of cocaine and delivery of cocaine alleged for enhancement purposes, the court sentenced Rose to forty years' imprisonment. See State v. Rose, No. 662269 (183d Dist. Ct., Harris County, Tex., Nov. 13, 1995).
On direct appeal, the Texas Fourteenth Court of Appeals affirmed Rose's conviction in an unpublished opinion. See Rose *678 v. State, No. 14-95-01413-CR, 1998 WL 268943 (Tex.App.  Houston [14th Dist.] May 28, 1998, pet. ref'd). The Texas Court of Criminal Appeals refused Rose's petition for discretionary review on September 16, 1998. See Rose v. State, No. 1053-98 (Tex.Crim.App. Sept. 16, 1998). Rose subsequently filed a state habeas application challenging his conviction, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court without a hearing. See Ex parte Rose, No. 6,301-05 (Tex.Crim. App. Dec. 8, 1998).
Rose filed his amended federal petition for writ of habeas corpus on August 30, 1999.

III. Claims

Rose raises a variety of claims in support of his petition for federal habeas corpus relief:
A. he received ineffective assistance of trial counsel because:
i. his attorney failed to object to the admission in evidence of a steak knife;
ii. his attorney failed to file a motion for discovery, a motion to suppress evidence, and a motion to obtain exculpatory evidence from the prosecutor;
iii. his attorney improperly relied on "a woman scorned" theory as part of his trial strategy;
iv. his attorney failed to argue properly his motion for new trial;
v. his attorney failed to interview Rose and his family members regarding his case; and
vi. his attorney failed to file a motion for instructed verdict based on an indictment that was fundamentally defective because it alleged that the offense occurred "on or about" April 16, 1993, which was not the actual date of the incident, the grand jury was never shown the knife before he was charged with aggravated robbery, and the indictment was amended without a change to the body of the indictment;
B. there was insufficient evidence to support the conviction because:
i. the knife offered into evidence was not shown to be the knife purportedly utilized in the offense;
ii. the knife was dusted for fingerprints but was not retained as evidence by the police;
iii. his fingerprints were not found at the scene and there was no evidence that he had stolen any property; and
iv. the complaining witness and the police officer gave differing testimony at trial;
C. he received ineffective assistance of counsel on appeal because his appellate attorney did not raise the ineffectiveness of trial counsel;
D. the State committed prosecutorial misconduct by:
i. introducing evidence of prior offenses for which Rose was not convicted;
ii. posing improper questions when cross-examining character witness Raymond Griffin;
iii. improperly questioning Rose in the punishment phase of the trial;
iv. making prejudicial statements during closing argument;
v. fabricating a deadly weapon and suppressing evidence;
vi. stating that Rose had represented himself for part of the proceeding;

*679 vii. accusing Rose of possessing information from the offense report which was not available to him;
viii. questioning fingerprint examiners about items not admitted in evidence or about which they had no personal knowledge;
ix. failing to notify Rose that it would seek a finding of the use of a deadly weapon; and
x. claiming the fact that Rose's fingerprints did not match any fingerprints found at the scene was irrelevant; and
E. the court erred by failing to charge the jury on the lesser included offense of robbery.

IV. Factual Background

At trial, Aldape and Rose, who had been co-workers at HEB Pantry Food Store, gave contradictory accounts of the events that occurred in her apartment on March 30, 1993. Aldape, who professed to be a lesbian, stated that she and Rose had a "hi/bye" relationship and that she had driven him home from work on several occasions. Aldape testified that on the date in question, she was caring for her roommate's three-month-old baby when Rose came to the door of her apartment and asked for a glass of water. She brought him one glass, and when he asked for another, she let him into the apartment and directed him to the kitchen because she was occupied changing the baby. When returning from the kitchen, Rose pulled a knife on her, ordered her to give him some money, and shut her in a bedroom closet with the baby for forty-five minutes. After Rose left, Aldape discovered that he had pilfered through her belongings and stolen a class ring, a pager, and $100.00 in cash.
According to Rose, Aldape was bisexual, and they had engaged in a sexual relationship for several months. Rose arrived at Aldape's apartment and, after talking awhile, told her he was hungry and thirsty. He began to cook a sandwich, using a small butter knife to cut it. After the meal, the two talked and then began to use crack cocaine. Two hours later, Rose told Aldape that he no longer felt he could continue their relationship because he was engaged to another woman. Aldape allegedly replied that if she could not have Rose, neither could his fiancee. Rose denied robbing Aldape and contends that her accusation of him was motivated by revenge for his ending their relationship.

V. Analysis

A. Ineffective Assistance of Counsel

In support of his ineffective assistance of counsel claim, Rose asserts that his trial counsel's representation was deficient in a number of respects. Rose contends that his attorney, Tyrone Moncriffe ("Moncriffe"), failed to object to the admission in evidence of a small steak knife, failed to file a motion for discovery or a motion to suppress evidence, and failed to obtain exculpatory evidence from the prosecutor. Additionally, Rose maintains that his attorney unwisely utilized "a woman scorned" theory as part of his trial strategy and failed to argue properly the motion for a new trial. Finally, Rose complains that his attorney failed to file a motion for instructed verdict based on the fundamentally defective nature of the indictment.
To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy a two-prong test. See Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); accord Williams v. Taylor, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *680 Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); Beets v. Scott, 65 F.3d 1258, 1273 (5th Cir.1995), cert. denied, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996). First, he must show that counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment" by demonstrating that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052; see Williams, 529 U.S. at 390-91, 120 S.Ct. 1495; Kitchens v. Johnson, 190 F.3d 698, 701 (5th Cir.1999); Boyd v. Johnson, 167 F.3d 907, 909 (5th Cir.), cert. denied, 527 U.S. 1055, 120 S.Ct. 20, 144 L.Ed.2d 824 (1999); Little v. Johnson, 162 F.3d 855, 860 (5th Cir.1998), cert. denied, 526 U.S. 1118, 119 S.Ct. 1768, 143 L.Ed.2d 798 (1999); Beets, 65 F.3d at 1272-73. To make this showing, he must overcome a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance. See Strickland, 466 U.S. at 698, 104 S.Ct. 2052; Kitchens, 190 F.3d at 701; Crane v. Johnson, 178 F.3d 309, 312 (5th Cir.), cert. denied, 528 U.S. 947, 120 S.Ct. 369, 145 L.Ed.2d 285 (1999); Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir.), cert. denied, 522 U.S. 944, 118 S.Ct. 361, 139 L.Ed.2d 281 (1997); Amos v. Scott, 61 F.3d 333, 347 (5th Cir.), cert. denied, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995); Teague v. Scott, 60 F.3d 1167, 1170 (5th Cir.1995). When reviewing such claims, "[j]udicial scrutiny of counsel's performance must be highly deferential," uncolored by "the distorting effects of hindsight." Strickland, 466 U.S. at 689, 104 S.Ct. 2052; see Crane, 178 F.3d at 312; Boyd, 167 F.3d at 909; Davis v. Johnson, 158 F.3d 806, 812 (5th Cir.1998), cert. denied, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999); Amos, 61 F.3d at 347-48; Teague, 60 F.3d at 1170.
Second, the petitioner must show that the deficient performance prejudiced his defense. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052; accord Williams, 529 U.S. at 390, 120 S.Ct. 1495; Fretwell, 506 U.S. at 370-72, 113 S.Ct. 838; Ransom, 126 F.3d at 721; Mangum v. Hargett, 67 F.3d 80, 84 (5th Cir.1995), cert. denied, 516 U.S. 1133, 116 S.Ct. 957, 133 L.Ed.2d 880 (1996); Beets, 65 F.3d at 1273. He must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that counsel's errors were so serious as to deprive him of a fair trial, a trial with a reliable result. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052; accord Williams, 529 U.S. at 391, 120 S.Ct. 1495; Fretwell, 506 U.S. at 370-72, 113 S.Ct. 838; Kitchens, 190 F.3d at 703; Lamb v. Johnson, 179 F.3d 352, 359 (5th Cir.), cert. denied, 528 U.S. 1013, 120 S.Ct. 522, 145 L.Ed.2d 401 (1999); Little, 162 F.3d at 861; Davis, 158 F.3d at 812; Emery v. Johnson, 139 F.3d 191, 196 (5th Cir.), cert. denied, 525 U.S. 969, 119 S.Ct. 418, 142 L.Ed.2d 339 (1998); Sharp v. Johnson, 107 F.3d 282, 286 n. 9 (5th Cir.1997); Mangum, 67 F.3d at 84; Amos, 61 F.3d at 348. "Specifically, he must show a `reasonable probability' that the jury would have otherwise harbored a reasonable doubt concerning guilt." Emery, 139 F.3d at 196; accord Carter v. Johnson, 131 F.3d 452, 463 (5th Cir.1997), cert. denied, 523 U.S. 1099, 118 S.Ct. 1567, 140 L.Ed.2d 801 (1998). "`A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams, 529 U.S. at 391, 120 S.Ct. 1495 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052); accord Davis, 158 F.3d at 812; see Lamb, 179 F.3d at 359; Crane, 178 F.3d at 312. "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." Id. (citing *681 Ransom, 126 F.3d at 721). "[E]ven `professionally unreasonable' errors by counsel do not warrant setting aside a conviction if the error had no effect on the judgment." Larsen v. Maggio, 736 F.2d 215, 217 (5th Cir.), cert. denied, 469 U.S. 1089, 105 S.Ct. 598, 83 L.Ed.2d 707 (1984).
Hence, to succeed on his ineffective assistance of counsel claim, Rose must show both deficient performance of counsel and resulting prejudice. See Williams, 529 U.S. at 390, 120 S.Ct. 1495; Strickland, 466 U.S. at 700, 104 S.Ct. 2052; United States v. Kimler, 167 F.3d 889, 893 (5th Cir.1999); Little, 162 F.3d at 860; Moawad v. Anderson, 143 F.3d 942, 946 (5th Cir.), cert. denied, 525 U.S. 952, 119 S.Ct. 383, 142 L.Ed.2d 316 (1998); Pratt v. Cain, 142 F.3d 226, 230 (5th Cir.1998); Emery, 139 F.3d at 196; Ransom, 126 F.3d at 721; Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir.), cert. denied, 522 U.S. 1017, 118 S.Ct. 605, 139 L.Ed.2d 492 (1997); Mangum, 67 F.3d at 84; James v. Cain, 56 F.3d 662, 667 (5th Cir.1995). Both prongs must be shown by a preponderance of the evidence. See Crane, 178 F.3d at 312; Rector v. Johnson, 120 F.3d 551, 563 (5th Cir.1997), cert. denied, 522 U.S. 1120, 118 S.Ct. 1061, 140 L.Ed.2d 122 (1998). Because a petitioner must satisfy both components of the Strickland test, the failure to establish either deficient performance or prejudice is fatal to such a claim and makes it unnecessary to examine the other component. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052; accord Lamb, 179 F.3d at 356-57; Kimler, 167 F.3d at 893; Moawad, 143 F.3d at 946; Pratt, 142 F.3d at 230; Amos, 61 F.3d at 348; Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995).

1. Failure to Object at Trial

Rose claims that his counsel rendered ineffective assistance when he failed to object to the State's offering into evidence a small steak knife which came from Aldape's kitchen and remained in her possession until the trial. Rose claims that Aldape produced the knife during trial and that Moncriffe should have objected to the admission of the knife because it could not be shown to be the actual knife used in the alleged robbery. Under Strickland, Rose must establish that his attorney "acted objectively unreasonably in failing to object and that he was prejudiced by the failure to object." Vuong v. Scott, 62 F.3d 673, 684 (5th Cir.), cert. denied, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995) (citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052); see Burnett v. Collins, 982 F.2d 922, 930 (5th Cir.1993); Rushing v. Butler, 868 F.2d 800, 806 (5th Cir.1989). Specifically, Rose must demonstrate that his counsel's performance was deficient under "`prevailing professional norms.'" Vuong, 62 F.3d at 684 (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). "While it is true that a failure to object properly or to preserve fundamental errors at trial may constitute ineffective assistance, ... the standard under Strickland ultimately diverts attention from legal error to assessing the probability that the outcome of the proceeding would have been different." Smith v. Black, 904 F.2d 950, 980 (5th Cir.1990), vacated on other grounds, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992) (citing Vela v. Estelle, 708 F.2d 954, 960-61 (5th Cir.1983), cert. denied, 464 U.S. 1053, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984)); see Burnett, 982 F.2d at 930. Hence, to establish prejudice in this context, Rose must show that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. See Williams, 529 U.S. at 391, 120 S.Ct. 1495; Strickland, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is a probability *682 sufficient to undermine confidence in the outcome of the trial. See Williams, 529 U.S. at 391, 120 S.Ct. 1495; Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Counsel's performance cannot be deemed ineffective, however, if the challenged evidence was either admissible or duplicative of evidence that was properly received. See Romero v. Lynaugh, 884 F.2d 871, 879 (5th Cir. 1989), cert. denied, 494 U.S. 1012, 110 S.Ct. 1311, 108 L.Ed.2d 487 (1990).
Under Texas law, "[a]s a general rule an object offered in evidence should not be rejected merely because it is not positively identified as the exact object that was connected with the crime." Hicks v. State, 508 S.W.2d 400, 402 (Tex. Crim.App.1974) (citing Pryor v. State, 449 S.W.2d 482, 484 (Tex.Crim.App.1969)). Instead, "an object, such as a knife, that is not an exact replica or duplicate of the original is admissible if it is relevant and material to an issue in the trial and is not overly inflammatory, and the original, if available, would have been admissible at trial." Simmons v. State, 622 S.W.2d 111, 113 (Tex.Crim.App.1981). If the original weapon or instrumentality used in the commission of the crime would be admissible as being competent, material, or relevant to an issue in dispute at trial, then a replica or duplicate would, likewise, be admissible. See id. at 114. Because a conviction for aggravated robbery requires proof of either serious bodily injury inflicted on another or the use or exhibition of a deadly weapon by the perpetrator, the knife was relevant to an issue in Rose's trial. See TEX. PEN. CODE ANN. § 29.03 (West 1993). In this instance, the indictment alleged the use of a "deadly weapon, to-wit: A Knife." In addition, Aldape testified that Rose had threatened her with a knife, and R.W. Chappell ("Chappell"), a Houston Police Officer, testified that the knife proffered at trial was a deadly weapon in his opinion. The State need not introduce the exact knife used in a robbery to meet its burden of proof that a defendant exhibited a deadly weapon. See Morales v. State, 633 S.W.2d 866, 868-69 (Tex.Crim.App.1982); Victor v. State, 874 S.W.2d 748, 751 (Tex.App.  Houston [14th Dist.] 1994, pet. ref'd).
Here, because the knife the State introduced was admissible as a material element of the offense of aggravated robbery, the knife did not become inadmissible because it may have been a replica of the weapon used rather than the original knife. At trial, Aldape testified that the knife Rose used in the commission of the offense came from the same set of six steak knives as the one she brought to trial. The State's purpose in introducing the knife was not to show that it was the exact knife used in the commission of the crime but to show that it was identical to the knife used in the robbery. On state habeas review, the trial court made the following findings of fact concerning the knife, findings that were subsequently adopted by the Texas Court of Criminal Appeals:
16. During the applicant's trial, the trial court admitted into evidence, without objection, a steak knife as being like the steak knife which the applicant used to threaten the complainant in her apartment during the offense.
17. The Court finds, based on the testimony at trial, that the steak knife admitted into evidence was one of a set of identical steak knives belonging to the complainant.
"The State can prove that a particular knife is a deadly weapon by showing its size, shape and sharpness, the manner of its use, or intended use, and its capacity to produce death or serious bodily injury." Posey v. State, 763 S.W.2d 872, 875 (Tex. App.  Houston [14th Dist.] 1988, pet. *683 ref'd); see Victor, 874 S.W.2d at 751. Therefore, because the knife was admissible, the outcome of the proceeding would not have been different had Moncriffe objected to its admission. See Williams, 120 S.Ct. at 1512; Romero, 884 F.2d at 879. Hence, Moncriffe cannot be faulted for failing to object to admissible evidence. It is well established that the "failure to assert a meritless objection cannot be grounds for a finding of deficient performance." Emery, 139 F.3d at 198 (citing Clark v. Collins, 19 F.3d 959, 966 (5th Cir.), cert. denied, 513 U.S. 966, 115 S.Ct. 432, 130 L.Ed.2d 344 (1994)).
Furthermore, even if the admission of the steak knife had been improper, isolated failures to object to procedural errors or improper evidence do not constitute ineffective assistance of counsel. See Ingham v. State, 679 S.W.2d 503, 509 (Tex.Crim.App.1984); Thomas v. State, 886 S.W.2d 388, 392 (Tex.App.Houston [1st Dist.] 1994, pet. ref'd). To establish ineffective assistance of counsel, the petitioner must show that counsel committed "errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see Crane, 178 F.3d at 312; Rector, 120 F.3d at 563; Morris v. California, 966 F.2d 448, 456 (9th Cir.), cert. denied, 506 U.S. 831, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992). A petitioner seeking to prove ineffective assistance "must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). "Tactical and strategical decisions of counsel `if based on informed and reasoned practical judgment' will not be second-guessed." Ransom, 126 F.3d at 721 (citing McCoy v. Lynaugh, 874 F.2d 954, 964 (5th Cir.1989) (quoting Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir.1985), cert. dismissed, 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986))). "An attorney's failure to object to the admission of inadmissible evidence is not necessarily ineffective." Morris, 966 F.2d at 456. "Failure to object to inadmissible testimony can constitute a sound and plausible trial strategy." Thomas, 886 S.W.2d at 392.
In this instance, Moncriffe's choice not to voice an objection to the admission of the knife was reasonable trial strategy. See Ransom, 126 F.3d at 721; Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997); Teague, 60 F.3d at 1172; McCoy, 874 F.2d at 964. In his affidavit submitted in connection with the state habeas proceeding, Moncriffe states:
After we gathered our factual background and aligned it with Mr. Rose's story, we created a theme for the trial. "The complaining witness was in love with Mr. Rose and was bringing these charges as a personal vendetta." "A woman scorned".

I made no objection to her bringing the knife because I thought it visually provided the Jury with a perspective of her vindictiveness. I was also aware that no prints were taken that could connect Mr. Rose to having touched the knife. Our trial strategy was based upon the central theme of the case. My voir-dire, cross-examination, and arguments were devised with an attempt to persuade the Jury of my theme.
The state habeas courts recognized that Moncriffe "made a strategic trial decision to attempt to portray the complainant as a woman with a personal vendetta against the applicant." Thus, Moncriffe's decision not to contest the admission of the knife was part of an overall defensive strategy, a decision that will not be second-guessed by *684 this court. Therefore, Rose's ineffective assistance of counsel claim based on his attorney's failure to object to the admission of the steak knife is without merit.

2. Failure to File Motions

Rose also claims that he received ineffective assistance of counsel because his attorney failed to file a motion for discovery, a motion to suppress evidence, or a motion to obtain exculpatory or "Brady" material from the prosecutor. A failure by counsel to file motions does not per se constitute ineffective assistance of counsel. See Kimmelman v. Morrison, 477 U.S. 365, 383-84, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). A determination of ineffectiveness "depends on whether either a suppression motion or an objection would have been granted or sustained had it been made." United States v. Oakley, 827 F.2d 1023, 1025 (5th Cir.1987). Counsel, however, has no duty to file pre-trial discovery motions where, as here, the prosecution has established an open file policy that makes the filing of discovery motions and Brady requests pointless. See Smith v. Maggio, 696 F.2d 365, 367 (5th Cir.), cert. denied, 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 113 (1983).
Moreover, "the filing of pre-trial motions `falls squarely within the ambit of trial strategy.'" Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir.1985) (quoting Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984)). Such a conscious and informed decision, based on trial tactics and strategy, cannot form the basis for federal habeas corpus relief unless it is so ill-chosen that it permeates the entire trial with obvious unfairness. See Garland v. Maggio, 717 F.2d 199, 206 (5th Cir.1983); see also Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052; Green, 116 F.3d at 1122; Teague, 60 F.3d at 1172; Moreno v. Estelle, 717 F.2d 171, 176-77 (5th Cir.1983), cert. denied, 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984); Daniels v. Maggio, 669 F.2d 1075, 1079 (5th Cir.), cert. denied, 459 U.S. 968, 103 S.Ct. 295, 74 L.Ed.2d 278 (1982). No such unfairness has been shown here.
Rose complains that his attorney failed to file a motion for discovery and a motion to suppress evidence, which he claims were important to his defense "because of the circumstances at hand." He maintains that had his attorney filed these motions, he would have learned that the prosecution did not have the knife in its possession and the State would have been forced during the pre-trial motion hearing to reveal that it possessed no evidence. The standard for ineffective assistance of counsel in this context is based upon whether the motion to suppress would have been granted had it been made. See Kimmelman, 477 U.S. at 383-84, 106 S.Ct. 2574. In this case, as discussed above, the knife was admissible; thus, a motion to suppress such evidence would have been unavailing. Additionally, as Moncriffe states in his affidavit, "There was nothing to suppress in this case, so a Motion to Suppress was irrelevant."
Rose appears to claim that a discovery motion would have revealed that the State lacked any physical evidence against him, specifically the knife allegedly used in the robbery and any fingerprints at the scene. An attorney is not obligated to file pre-trial discovery motions, however, where the prosecution has an open-file policy. See Smith, 696 F.2d at 367. Moncriffe states in his affidavit, "The District Attorney always had an open file on this case, and provided me with every request for Discovery, therefore it was useless to file a Motion for Discovery." During a pre-trial hearing, Moncriffe concurred with the assertion of the prosecutor, John Miles ("Miles"), that he had been privileged to the trial proceedings prior to taking over as counsel. Additionally, Miles stated, and Moncriffe agreed, that he had access to *685 anything in the file he needed. Furthermore, Rose's previous attorney, Hazel R. Bolden, filed a Motion for Discovery and Inspection, so Rose cannot complain of the absence of such a motion.
Rose's contentions regarding Brady evidence and counsel's duty to obtain exculpatory evidence are similarly misplaced. It is well established that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); see Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Little, 162 F.3d at 861; Pyles v. Johnson, 136 F.3d 986, 998 (5th Cir.1998), cert. denied, 524 U.S. 933, 118 S.Ct. 2338, 141 L.Ed.2d 707 (1998); Goodwin v. Johnson, 132 F.3d 162, 186 (5th Cir.1997). A prosecutor's duty to disclose under Brady includes evidence that may be used to impeach a witness's credibility. See Strickler v. Greene, 527 U.S. 263, 282 n. 21, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Felder v. Johnson, 180 F.3d 206, 213 (5th Cir.), cert. denied, 528 U.S. 1067, 120 S.Ct. 630, 145 L.Ed.2d 520 (1999); Thompson v. Cain, 161 F.3d 802, 806 (5th Cir.1998); Pyles, 136 F.3d at 998; Goodwin, 132 F.3d at 186. The duty to disclose has also been extended to the situation where no request is made by the defense "if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); see Strickler, 527 U.S. at 281-82, 119 S.Ct. 1936.
To establish a Brady violation, the petitioner must prove: (1) the prosecutor suppressed or withheld evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the defendant's case. See id.; Moore v. Illinois, 408 U.S. 786, 794-95, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); Little, 162 F.3d at 861; United States v. Burns, 162 F.3d 840, 851 (5th Cir.1998), cert. denied, 526 U.S. 1076, 119 S.Ct. 1477, 143 L.Ed.2d 560 (1999); Castillo v. Johnson, 141 F.3d 218, 222 (5th Cir.), cert. denied, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998); Westley v. Johnson, 83 F.3d 714, 725 (5th Cir.1996), cert. denied, 519 U.S. 1094, 117 S.Ct. 773, 136 L.Ed.2d 718 (1997); East v. Scott, 55 F.3d 996, 1002 (5th Cir.1995). Evidence is material if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. See Strickler, 527 U.S. at 280, 119 S.Ct. 1936; Wood v. Bartholomew, 516 U.S. 1, 5, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995); Bagley, 473 U.S. at 682, 105 S.Ct. 3375; Felder, 180 F.3d at 213; Little, 162 F.3d at 861-62; Burns, 162 F.3d at 851; Pyles, 136 F.3d at 998; Goodwin, 132 F.3d at 186; East, 55 F.3d at 1002; Blackmon v. Scott, 22 F.3d 560, 564 (5th Cir.), cert. denied, 513 U.S. 1060, 115 S.Ct. 671, 130 L.Ed.2d 604 (1994). A reasonable probability is "`a probability sufficient to undermine confidence in the outcome'" of the proceedings. Bagley, 473 U.S. at 682, 105 S.Ct. 3375 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052); see Little, 162 F.3d at 862; Burns, 162 F.3d at 851; East, 55 F.3d at 1002. "`[T]he adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Strickler, 527 U.S. at 289-90, 119 S.Ct. 1936 (quoting *686 Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)); accord Spence v. Johnson, 80 F.3d 989, 998 (5th Cir.), cert. denied, 519 U.S. 1012, 117 S.Ct. 519, 136 L.Ed.2d 407 (1996).
The decision in Brady "does not establish a broad discovery rule; rather, it defines the Government's minimum duty under the due process clause to ensure a fair trial." United States v. McKinney, 758 F.2d 1036, 1049 (5th Cir.1985) (citing United States v. Campagnuolo, 592 F.2d 852, 855, 860 (5th Cir.1979)). "Brady claims involve `the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'" West v. Johnson, 92 F.3d 1385, 1399 (5th Cir.1996), cert. denied, 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997) (quoting Agurs, 427 U.S. at 103, 96 S.Ct. 2392); see Castillo, 141 F.3d at 223. Evidence is not suppressed, however, if "`the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.'" West, 92 F.3d at 1399 (quoting Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir.1994)); see Rector, 120 F.3d at 560; Williams v. Scott, 35 F.3d 159, 163 (5th Cir.1994), cert. denied, 513 U.S. 1137, 115 S.Ct. 959, 130 L.Ed.2d 901 (1995). The State is not required to furnish a defendant with exculpatory evidence that is fully available to the defendant or that could be obtained through reasonable diligence. See Gibbs v. Johnson, 154 F.3d 253, 256 (5th Cir.1998), cert. denied, 526 U.S. 1089, 119 S.Ct. 1501, 143 L.Ed.2d 654 (1999); Blackmon, 22 F.3d at 564-65. "Under Brady, the prosecution has no obligation to produce evidence or information already known to the defendant, or that could be obtained through the defendant's exercise of reasonable diligence." Castillo, 141 F.3d at 223.
Moreover, the Brady rule applies only to exculpatory and impeachment evidence, not to inculpatory or neutral evidence. See United States v. Nixon, 881 F.2d 1305, 1308 (5th Cir.1989); see also Lawrence, 42 F.3d at 257; Andrews v. Collins, 21 F.3d 612, 626 (5th Cir.1994), cert. denied, 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995). It also does not encompass cumulative evidence. See Westley, 83 F.3d at 725; Andrews, 21 F.3d at 626. "[T]he prosecutor is under no duty to make a complete and detailed accounting to defense counsel of all investigatory work done." Blackmon, 22 F.3d at 565; see Rector, 120 F.3d at 560. Thus, Brady does not extend due process to require that the prosecution pursue every possible avenue of investigation or present the defendant's case for him. See Johnston v. Pittman, 731 F.2d 1231, 1234 (5th Cir. 1984), cert. denied, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); see also Moore, 408 U.S. at 795, 92 S.Ct. 2562.
Here, Rose has not shown that any evidence was suppressed, that it was material, or that it would have been helpful to the defense. During the pre-trial hearing, Miles informed the court that all of the evidence he possessed was inculpatory. Rose has failed to demonstrate the existence of any evidence suppressed by the State that might have been favorable to him or material to his case. Consequently, Rose's Brady claim is unfounded.
In addition, Rose's claim regarding pre-trial motions "falls squarely within the ambit of trial strategy." See Schwander, 750 F.2d at 500. "Tactical and strategical decisions of counsel `if based on informed and reasoned practical judgment' will not be second-guessed." Ransom, 126 F.3d at 721 (citing McCoy, 874 F.2d at 964 (quoting Mattheson, 751 F.2d at 1441)); see Kitchens, 190 F.3d at 704; Lamb, 179 F.3d at 358; Carter, 131 F.3d at 466. *687 Courts will not find ineffective assistance of counsel merely because of a disagreement with counsel's trial strategy. See Crane, 178 F.3d at 312 (citing Green, 116 F.3d at 1122). An attorney's decision regarding the filing of pre-trial motions is a "conscious and informed decision based on trial tactics and strategy" which, like all such decisions, cannot form the basis for habeas corpus relief unless "it is so ill chosen that it permeates the entire trial with obvious unfairness." Garland, 717 F.2d at 206; accord Green, 116 F.3d at 1122; Teague, 60 F.3d at 1172; see Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052; Moreno, 717 F.2d at 177; Daniels, 669 F.2d at 1079. Rose has not shown such unfairness in this situation. See Jones v. Butler, 864 F.2d 348, 366 (5th Cir.1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989).
When Rose raised these claims in his state habeas application, the trial court made the following findings of fact:
6. The Court finds, based on the credible affidavit of counsel Moncriffe, that counsel made the strategic decision that a Motion for Discovery was unnecessary because he was able to review the State's file and was provided information.
7. The court finds, based on the credible affidavit of counsel Moncriffe, that counsel made a strategic decision not to file a motion to suppress based on the lack of evidence which could be suppressed.
* * * * * *
9. The Court finds, based upon official court documents, that prior counsel, who withdrew before the applicant's trial, filed numerous motions, including a motion for discovery and inspection.
10. The Court further finds, based upon official court documents, that counsel Moncriffe also filed numerous motions after he was appointed as the applicant's counsel.
11. The court finds that, during a hearing on pre-trial motions, the prosecutor stated that he had only inculpatory evidence; that counsel Moncriffe had reviewed the State's file; and, that counsel was privileged to the communications between the State and the applicant's previous attorneys.
12. The Court further finds that counsel Moncriffe, during the hearing, acknowledged that the prosecutor's statement was true.
The Texas Court of Criminal Appeals explicitly adopted these findings when it denied Rose's state habeas application without written order on the findings of the trial court. These findings are presumptively correct under 28 U.S.C. § 2254(e)(1). See Clark v. Johnson, 202 F.3d 760, 764 (5th Cir.), cert. denied, ___ U.S. ___, 121 S.Ct. 84, 148 L.Ed.2d 46 (2000); Kitchens, 190 F.3d at 700; Carter, 131 F.3d at 460; Childress v. Johnson, 103 F.3d 1221, 1225 (5th Cir.1997); Vuong, 62 F.3d at 683. Section 2254(e)(1) retains "the traditional presumption of correctness afforded to state court factual determinations" under former § 2254(d). Childress, 103 F.3d at 1225. Therefore, federal courts in habeas corpus proceedings are required to accord a presumption of correctness to state court findings of fact, unless they lack even fair support in the record. See Demosthenes v. Baal, 495 U.S. 731, 735, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990); Rushen v. Spain, 464 U.S. 114, 120, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); Emery, 139 F.3d at 199; Carter, 131 F.3d at 460; James v. Whitley, 39 F.3d 607, 609-10 (5th Cir.1994), cert. denied, 514 U.S. 1069, 115 S.Ct. 1704, 131 L.Ed.2d 565 (1995); Crank v. Collins, 19 *688 F.3d 172, 176 (5th Cir.), cert. denied, 512 U.S. 1214, 114 S.Ct. 2699, 129 L.Ed.2d 825 (1994).
The Fifth Circuit has confirmed that "any state-court factual determinations must be presumed correct unless rebutted by clear and convincing evidence." Davis, 158 F.3d at 812 (citing 28 U.S.C. § 2254(e)(1)); accord Clark, 202 F.3d at 764; Kitchens, 190 F.3d at 700; Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir.), cert. denied, 526 U.S. 1041, 119 S.Ct. 1339, 143 L.Ed.2d 503 (1999). The presumption is especially strong when, as here, the state habeas court and the trial court are identical. See Clark, 202 F.3d at 764; Boyle v. Johnson, 93 F.3d 180, 186 (5th Cir.1996), cert. denied, 519 U.S. 1120, 117 S.Ct. 968, 136 L.Ed.2d 853 (1997); Amos, 61 F.3d at 347. Hence, in the absence of affirmative proof of error, the state court's findings are deemed to be correct. See Teague, 60 F.3d at 1170. "Mere disagreement with the state court factual findings is not sufficient to overcome those findings. Even an ambiguous record entitles the state court findings to this presumption of correctness." Id. Nevertheless, "[w]hile the measure of deference afforded state court factual findings is substantial, ... it is not absolute." Childress, 103 F.3d at 1226 n. 7. "Section 2254(d)(2) authorizes issuance of the writ if the state court decision `was based on an unreasonable determination of the facts in light of the evidence presented.'" Id. (quoting 28 U.S.C. § 2554(d)(2)).
When the effectiveness of counsel is at issue, although the ultimate question of whether counsel's performance was deficient and prejudicial is a mixed question of law and fact, state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(e)(1). See Strickland, 466 U.S. at 698, 104 S.Ct. 2052; Davis, 158 F.3d at 812 (citing Nobles v. Johnson, 127 F.3d 409, 418 (5th Cir. 1997), cert. denied, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998)); Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir.), cert. denied, 513 U.S. 960, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994); Carter v. Collins, 918 F.2d 1198, 1202 (5th Cir.1990). When a state court has determined that counsel was reasonably effective, federal courts "look to whether the state court decision rested on `an unreasonable application of clearly established federal law.'" Kitchens, 190 F.3d at 701 (quoting 28 U.S.C. § 2254(d)(1)) (citing Drinkard v. Johnson, 97 F.3d 751, 767-68 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997)). "A state court's application of federal law is unreasonable when `reasonable jurists considering the question would be of one view that the state court ruling was incorrect.'" Id. (quoting Drinkard, 97 F.3d at 769).
In this instance, Rose, as the petitioner, has the burden of rebutting such findings by producing clear and convincing evidence that they are incorrect. See 28 U.S.C. § 2254(e)(1). He has not done so. Indeed, the trial court's findings are amply supported by the record. This court, therefore, is required to accept as conclusive both the factual findings and the credibility choices of the state courts. See Carter, 918 F.2d at 1202.

3. Use of "A Woman Scorned" Trial Theme

Rose further contends that he received ineffective assistance of counsel because Moncriffe made an unwise decision to utilize the trial theme of "a woman scorned" regarding the complainant. Rose argues that due to this trial theme, his attorney failed to object to the admission *689 of the steak knife and failed to file a discovery motion or a motion to suppress.
An attorney's decision to use a specific theme at trial is a "conscious and informed decision based on trial tactics and strategy" which, like all such decisions, cannot form the basis for habeas corpus relief unless "it is so ill chosen that it permeates the entire trial with obvious unfairness." Garland, 717 F.2d at 206; accord Green, 116 F.3d at 1122; Teague, 60 F.3d at 1172; see Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052; Moreno, 717 F.2d at 177; Daniels, 669 F.2d at 1079. No such unfairness has been demonstrated here, as Moncriffe's choice of a trial theme comported with Rose's recount of the incident, and due to the nature of the offense and other evidence in the record, he was restricted in the types of defenses he could reasonably pursue.
As stated in his affidavit, Moncriffe created the "woman scorned" theory based upon Rose's version of the events. The state habeas courts made the following finding regarding the trial theme:
3. The Court finds, based on the credible affidavit of counsel Tyrone Moncriffe and on the evidence elicited at trial, that counsel made a strategic trial decision to attempt to portray the complainant as a woman with a personal vendetta against the applicant.
Rose contends, however, that Moncriffe should have objected to Aldape bringing the knife to trial and further argues that his failure to object was "unprofessional." Yet, he concedes in his motion for summary judgment that "he knew [Aldape] was a woman scorned." Moreover, as discussed previously, the knife was admissible in evidence, and counsel had no need to file a motion to suppress or a motion for discovery. Thus, it cannot be said that Moncriffe's trial strategy "permeates the entire trial with obvious unfairness." See Garland, 717 F.2d at 206.
In addition, Rose posits no viable alternative theories to account for Aldape's allegations, nor does he specify what other defenses his attorney should have advanced. Mere conclusory allegations in support of claims of ineffective assistance of counsel, such as those made by Rose, are insufficient as a matter of law to raise a constitutional issue. See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir.), cert. denied, ___ U.S. ___, 121 S.Ct. 122, 148 L.Ed.2d 77 (2000); Kinnamon v. Scott, 40 F.3d 731, 735 (5th Cir.), cert. denied, 513 U.S. 1054, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994); Flores v. Johnson, 957 F.Supp. 893, 910 (W.D.Tex.1997). In the absence of a specific showing of the manner in which counsel's alleged errors and omissions were constitutionally deficient and how they prejudiced his right to a fair trial, a habeas petitioner cannot prevail on an ineffective assistance of counsel claim. See Miller, 200 F.3d at 282; Barnard v. Collins, 958 F.2d 634, 642 n. 11 (5th Cir. 1992), cert. denied, 506 U.S. 1057, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993). In sum, the Fifth Circuit "has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller, 200 F.3d at 282 (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir.1983)). Moreover, counsel cannot be faulted for failing to pursue a defense that is not supported by the evidence. See Schwander, 750 F.2d at 499-500; Murray, 736 F.2d at 283. "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." United States v. Cronic, 466 U.S. 648, 657 n. 19, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (citing Nickols v. Gagnon, 454 F.2d 467, 472 *690 (7th Cir.1971), cert. denied, 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 336 (1972)). Thus, Rose's complaints about counsel's choice of a trial theme must be rejected.

4. Inadequate Argument on Motion for New Trial

Rose further maintains that he received ineffective assistance of counsel because Moncriffe failed to adopt arguments Rose asserted in a motion for new trial filed pro se on September 6, 1995. After Rose was sentenced on November 13, 1995, Moncriffe filed a motion for new trial on November 27, 1995, alleging that there was insufficient evidence to support the conviction. Rose contends that Moncriffe was ineffective for failing to address all the arguments Rose raised in his pro se motion. He asserts that Moncriffe improperly omitted the following arguments: (1) the court misdirected the jury as to the law in not explaining alternative theories to the jury; (2) the court did not require proof of each element of the offense or offer the lesser included offense of robbery in its jury instructions; and (3) the verdict is contrary to the law and evidence.
It is well settled that a "criminal defendant does not have the right ... to a `hybrid representation,' partly by counsel and partly by himself." Neal v. State, 870 F.2d 312, 315-16 (5th Cir. 1989) (quoting United States v. Daniels, 572 F.2d 535, 540 (5th Cir.1978)). Because Rose elected to be represented by an attorney, his complaint regarding Moncriffe's failure to adopt his pro se arguments is unfounded. "[T]here is no constitutional right to hybrid representation." Myers v. Johnson, 76 F.3d 1330, 1335 (5th Cir.1996) (citing McKaskle v. Wiggins, 465 U.S. 168, 182-83, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)). The trial court is not required to permit "`hybrid' representation," as a "defendant does not have a right to choreograph special appearances by counsel." McKaskle, 465 U.S. at 183, 104 S.Ct. 944; see Scarbrough v. State, 777 S.W.2d 83, 92 (Tex. Crim.App.1989). On state habeas review, the court found that "[b]ecause the applicant is not entitled to hybrid representation, trial counsel is not ineffective for failure, if any, to adopt the applicant's pro se motions." Furthermore, Moncriffe argued that the verdict was contrary to the law and evidence, and Rose had no constitutional right to a jury instruction on lesser included offenses. See Creel v. Johnson, 162 F.3d 385, 391 (5th Cir. 1998), cert. denied, 526 U.S. 1148, 119 S.Ct. 2027, 143 L.Ed.2d 1038 (1999). Therefore, with respect to the omitted arguments, Rose has failed to raise a constitutional claim cognizable on federal habeas corpus review.

5. Failure to Conduct Thorough Investigation

Rose additionally asserts that his attorney failed to conduct a thorough investigation of his case. He contends that Moncriffe did not interview Rose, his common-law wife, or other family members regarding the facts of the case in order to develop a proper defense. He also asserts that a proper investigation would have disclosed that the State was not in possession of the weapon allegedly used in the robbery.
To render effective assistance, "counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." Ransom, 126 F.3d at 723 (citing Strickland, 466 U.S. at 691, 104 S.Ct. 2052); see Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir. 1985); Martin v. Maggio, 711 F.2d 1273, 1280 (5th Cir.1983), cert. denied, 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984). *691 The reasonableness of an investigation depends in part on the information supplied by the defendant. See Ransom, 126 F.3d at 723; McCoy, 874 F.2d at 964. "`The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.... In particular, what investigation decisions are reasonable depends critically on such information.'" Boyd, 167 F.3d at 910 (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052). In determining the reasonableness of a decision not to investigate, information provided by the defendant is only one factor, but in some cases it may be the controlling factor. See Ransom, 126 F.3d at 723 (citing McCoy, 874 F.2d at 964). Nevertheless, "[d]efense counsel is not required `to investigate everyone whose name happens to be mentioned by the defendant.'" Schwander, 750 F.2d at 500 (quoting United States v. Cockrell, 720 F.2d 1423, 1428 (5th Cir. 1983), cert. denied, 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984)).
In order to establish that counsel was ineffective due to a failure to investigate the case or to discover and present evidence, the petitioner must do more than merely allege a failure to investigate  he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. See Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir.1994); Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir.1993); United States v. Green, 882 F.2d 999, 1003 (5th Cir.1989); Lockhart v. McCotter, 782 F.2d 1275, 1282-83 (5th Cir. 1986), cert. denied, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987); Alexander v. McCotter, 775 F.2d 595, 603 (5th Cir.1985); Schwander, 750 F.2d at 500-01. Moreover, when trial counsel's decision not to pursue further investigation into a potential defense or into an area of potentially mitigating evidence is based on consultation with the defendant, which leads the attorney to believe that further investigation would be fruitless, that decision may not be challenged as unreasonable. See Boyle, 93 F.3d at 187-88; West, 92 F.3d at 1406-09; Andrews, 21 F.3d at 623. Hence, the extent of counsel's investigation must be viewed in the context of the defendant's cooperation with his attorney in facilitating the investigation. See Randle v. Scott, 43 F.3d 221, 225 (5th Cir.), cert. denied, 515 U.S. 1108, 115 S.Ct. 2259, 132 L.Ed.2d 265 (1995).
With respect to counsel's duty to investigate, the Supreme Court has observed:
strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052; see Bell v. Lynaugh, 828 F.2d 1085, 1088 (5th Cir.), cert. denied, 484 U.S. 933, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987); Lowenfield v. Phelps, 817 F.2d 285, 290 (5th Cir.1987), aff'd on other grounds, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). Counsel, however, is not required to perform form futile acts or embark on improvident investigations. See Westley, 83 F.3d at *692 722; Sones v. Hargett, 61 F.3d 410, 415 n. 5 (5th Cir.1995); Clark, 19 F.3d at 966; McCoy, 874 F.2d at 963; Morlett v. Lynaugh, 851 F.2d 1521, 1525 (5th Cir.1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1546, 103 L.Ed.2d 850 (1989); Murray, 736 F.2d at 283. Thus, an attorney's proper tactical choice not to conduct an investigation should not be confused with a breach of the duty to investigate. See Beavers v. Balkcom, 636 F.2d 114, 116 (5th Cir.1981). As with any ineffective assistance of counsel claim, the petitioner must prove that an alleged breach of his attorney's duty to investigate "resulted in an actual and substantial disadvantage to the course of his defense." Baldwin v. Maggio, 704 F.2d 1325, 1333 (5th Cir.1983), cert. denied, 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984). The petitioner may not simply allege, but must "affirmatively prove," prejudice. See Strickland, 466 U.S. at 693, 104 S.Ct. 2052.
In his affidavit, Moncriffe explains the extent of his investigation:
After I was appointed to Mr. Rose, I immediately requested an investigator from the Court to assist me with gathering interviews and witnesses. I had extensive interviews with Mr. Rose and his wife in an attempt to structure his version of the events. My investigator, Mrs. Johnson, gathered interviews from the apartment complex in an attempt to obtain a visual perspective of Mr. Rose's story. We interviewed Mr. Rose's family members to gather mitigation information pertaining to Mr. Rose's background, achievements and overall adjustments to society, both positive and negative.
I spent a number of nights at the home of Mr. Rose's family members gathering information about minute facts of his life.
The state habeas courts confirmed that Moncriffe undertook a thorough investigation of the incident in question as well as Rose's background, seeking to develop both defensive and mitigating evidence. The trial court made the following findings, which were adopted by the Court of Criminal Appeals:
4. The Court finds, based on the credible affidavit of counsel Moncriffe and on the appellate record, that counsel interviewed witnesses as to the facts of the offense.
5. The Court finds, based on the credible affidavit of counsel Moncriffe, that counsel interviewed the applicant's family to attempt to gather mitigating evidence concerning the applicant's background.
These findings are presumptively correct under 28 U.S.C. § 2254(e)(1). See Clark, 202 F.3d at 764; Kitchens, 190 F.3d at 700. Rose has proffered no evidence to rebut the presumption.
Furthermore, Rose does not detail what additional investigation counsel should have undertaken, what such investigation would have revealed, what specific evidence would have been disclosed, or how the evidence would have altered the outcome of the trial. See Anderson, 18 F.3d at 1221; Nelson, 989 F.2d at 850; Green, 882 F.2d at 1003. With respect to the knife, the only specific item mentioned by Rose, even if Moncriffe's investigation had revealed that the State did not possess the knife allegedly used in the crime, such a discovery would not have altered the course of the trial, as the knife proffered in evidence would still have been admissible. Moreover, a perusal of the statement of facts indicates that Moncriffe was quite familiar with the salient facts of the case as well as its strengths and weakness. He attempted to fashion a defense that would explain Rose's actions and account for the *693 adverse evidence. Yet, as Moncriffe explains in his affidavit:
The complaining witness was steadfast and unshakable. She came across as credible and sincere. Unfortunately, her story was more credible than Mr. Roses [sic], particularly when she stated that she had no love for Mr. Rose because she was a lesbian, preferring women over men.
She stated very articulately that she was just trying to help Mr. Rose when he robbed her at knife point.
Hence, Rose has failed to show how further investigation by his attorney would have altered the result of the trial. Therefore, Rose's failure to investigate claim is without factual or legal basis.

6. Failure to Move for Instructed Verdict Based on Defective Indictment

Rose further maintains that counsel was ineffective for failing to move for an instructed verdict on the basis that the indictment was fundamentally defective. He contends that the indictment was invalid because: (1) he was indicted for an offense committed "on or about" April 16, 1993, which was not the actual offense date; (2) the grand jury was never shown the knife before he was charged with aggravated robbery; and (3) the indictment was amended without a change to the body of the indictment. Rose points out that Aldape testified that the offense occurred on March 30, 1993, rather than April 16, 1993. He also complains that the grand jury indicted him without seeing the deadly weapon alleged in the indictment. Moreover, although the trial court granted the State's Motion for Leave to Amend Indictment, requesting that the cause number in the second enhancement paragraph be changed from "F-90-4800LNS" to "F-90-4800INS," the body of the indictment was not changed.
Rose's indictment reads in part:
IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:
The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, NATHAN LYNN ROSE, hereafter styled the Defendant, on or about APRIL 16, 1993, had then and there unlawfully, while in the course of committing theft of property owned by MARY ALDAPE and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place MARY ALDAPE in fear of imminent bodily injury and death, and the Defendant did then and there use and exhibit a deadly weapon, to-wit: A KNIFE.
Under the Constitution, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Bailey, 444 U.S. 394, 414, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (quoting Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)); see Russell v. United States, 369 U.S. 749, 763-64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); United States v. Devoll, 39 F.3d 575, 578 (5th Cir.1994), cert. denied, 514 U.S. 1067, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995). A plain reading of the indictment demonstrates that it informed Rose of the elements of the charge against him and provided sufficient detail to enable him to rely upon the indictment for a double jeopardy bar in the event of a subsequent prosecution. Thus, Rose's indictment satisfies the requirements of the Constitution. See United States v. Hernandez, 891 F.2d *694 521, 525 (5th Cir.1989), cert. denied, 495 U.S. 909, 110 S.Ct. 1935, 109 L.Ed.2d 298 (1990) (citing Hamling, 418 U.S. at 117, 94 S.Ct. 2887; United States v. Manotas-Mejia, 824 F.2d 360, 365 (5th Cir.), cert. denied, 484 U.S. 957, 108 S.Ct. 354, 98 L.Ed.2d 379 (1987)); Calley v. Callaway, 519 F.2d 184, 226 (5th Cir.1975), cert. denied, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976).
Furthermore, the sufficiency of a state charging instrument is not a matter for federal habeas corpus relief unless the indictment is so defective that the convicting court had no jurisdiction. See Williams v. Collins, 16 F.3d 626, 637 (5th Cir.), cert. denied, 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994); McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), cert. denied, 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994); Yohey v. Collins, 985 F.2d 222, 229 (5th Cir.1993); Uresti v. Lynaugh, 821 F.2d 1099, 1102 (5th Cir. 1987); Millard v. Lynaugh, 810 F.2d 1403, 1407 (5th Cir.), cert. denied, 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 81 (1987); Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984); Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir.1980). The indictment must be flawed to the extent that under no circumstances could a valid conviction result from the facts provable under the indictment. See Morlett, 851 F.2d at 1523; Johnson v. Estelle, 704 F.2d 232, 236 (5th Cir.1983), cert. denied, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984). The sufficiency of an indictment is determined by looking to the law of the state where the indictment was issued. See Morlett, 851 F.2d at 1523; Liner, 731 F.2d at 1203; Johnson, 704 F.2d at 236. Thus, questions about whether an allegedly defective indictment confers jurisdiction on a state trial court are matters of state law. See McKay, 12 F.3d at 69 (citing Lavernia v. Lynaugh, 845 F.2d 493, 496 (5th Cir.1988); Bueno v. Beto, 458 F.2d 457, 459 (5th Cir.), cert. denied, 409 U.S. 884, 93 S.Ct. 176, 34 L.Ed.2d 140 (1972)).
Article 21.02 of the Texas Code of Criminal Procedure lists the requisites of an indictment in Texas:
An indictment shall be deemed sufficient if it has the following requisites:
1. It shall commence, "In the name and by authority of The State of Texas".
2. It must appear that the same was presented in the district court of the county where the grand jury is in session.
3. It must appear to be the act of a grand jury of the proper county.
4. It must contain the name of the accused, or state that his name is unknown and give a reasonably accurate description of him.
5. It must show that the place where the offense was committed is within the jurisdiction of the court in which the indictment is presented.
6. The time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation.
7. The offense must be set forth in plain and intelligible words.
8. The indictment must conclude, "Against the peace and dignity of the State".
9. It shall be signed officially by the foreman of the grand jury.
TEX. CODE CRIM. PROC. ANN. art. 21.02 (West 1993).
Under Texas law, an indictment is sufficient if it sets forth the offense charged "in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the *695 particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment ...." TEX. CODE CRIM. PROC. ANN. art. 21.11 (West 1993). An offense should be charged in plain and intelligible words with such certainty as to enable the accused to prepare a defense. See Benoit v. State, 561 S.W.2d 810, 813 (Tex.Crim.App. 1977); Hare v. State, 713 S.W.2d 396, 398 (Tex.App.El Paso 1986, pet. ref'd). In addition, an indictment should be read as a whole and viewed in light of common understanding. See Williams v. State, 848 S.W.2d 777, 780 (Tex.App.Houston [14th Dist.] 1993, no pet.); Hare, 713 S.W.2d at 398; Colon v. State, 680 S.W.2d 31, 33 (Tex.App.Austin 1984, no pet.). The test is whether the indictment alleges an offense under the law. See Williams, 848 S.W.2d at 780; see also Whetstone v. State, 786 S.W.2d 361, 365 (Tex.Crim.App.1990). An indictment that tracks the language of the statute is legally sufficient. See Beck v. State, 682 S.W.2d 550, 554 (Tex.Crim. App.1985).
At the time of the offense, the relevant Texas statute provided:
Aggravated Robbery
(a) A person commits an offense if he commits robbery as defined in Section 29.02 of this code, and he:
(1) causes serious bodily injury to another;
(2) uses or exhibits a deadly weapon; or
(3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:
(A) 65 years of age or older; or
(B) a disabled person.
(b) An offense under this section is a felony of the first degree.
TEX. PEN. CODE ANN. § 29.03 (West 1993). The statute defining the offense of robbery provided:
Robbery
(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:
(1) intentionally, knowingly, or recklessly causes bodily injury to another; or
(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.
TEX. PEN. CODE ANN. § 29.02 (West 1993). Here, in addition to meeting the other statutory requirements, the indictment closely follows the language of the controlling statute defining the offense of aggravated robbery under Texas law.
Furthermore, when the indictment was presented to the trial court, jurisdiction automatically vested. Under Texas law, the presentment of an indictment to the trial court confers jurisdiction, even if the instrument is defective. See McKay, 12 F.3d at 68; Studer v. State, 799 S.W.2d 263, 273 (Tex.Crim.App.1990). The Texas Constitution expressly provides that the "presentment of an indictment or information to a court invests the court with jurisdiction of the cause." TEX. CONST. art. V, § 12(b).
Additionally, when the Court of Appeals affirmed Rose's conviction and the Texas Court of Criminal Appeals refused his petition for discretionary review, the courts "`necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose.'" McKay, 12 F.3d at 68 (quoting Alexander, 775 F.2d at 599). In situations where, as here, the state courts have held an indictment to be *696 sufficient under state law, a federal court need not address the issue. See id.; Millard, 810 F.2d at 1407; Alexander, 775 F.2d at 599; Bueno, 458 F.2d at 459. As the Fifth Circuit stated in McKay, "the state court's implicit findings ... that the indictments were not fundamentally defective should end the inquiry." 12 F.3d at 70. This court is required to accord due deference to the state courts' interpretation of state law. See Weeks v. Scott, 55 F.3d 1059, 1063 (5th Cir.1995); McKay, 12 F.3d at 69; Reddix v. Thigpen, 805 F.2d 506, 511 (5th Cir.1986); Moreno, 717 F.2d at 179. In this instance, where the state courts found the indictment to be valid under state law, further inquiry by this court is unnecessary. "`[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Emery, 139 F.3d at 198 (quoting Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).
While the indictment alleges that the offense occurred "on or about" April 16, 1993, and the evidence adduced at trial indicates that it occurred on March 30, 1993, this discrepancy in the date did not render the indictment fundamentally defective. Under Texas law, an "on or about" reference means that "`the State may prove that an offense was committed before, on, or after the date alleged in the [indictment], so long as the date is anterior to the presentment of the [indictment] and not barred by limitation.'" Mireles v. State, 901 S.W.2d 458, 459 (Tex.Crim.App. 1995) (quoting Abston v. State, 158 Tex. Crim. 88, 253 S.W.2d 41, 42 (1952)). In this instance, although the record reflects that the offense occurred on March 30, 1993, seventeen days before the date alleged in the indictment, that date was anterior to the presentment of the indictment on April 29, 1993, and well within the five-year statute of limitation for aggravated robbery. See TEX. CODE CRIM. PROC. ANN. art. 12.01 (West 1993). Thus, the indictment was not flawed under Texas law and provided no basis for an instructed verdict of acquittal. Furthermore, the amendment to the indictment to change the cause number of an enhancement offense without any additional modifications to the body of the indictment was of no consequence. Finally, it was not necessary that the grand jury be shown the actual weapon used to commit the crime before returning an indictment for aggravated robbery. As the state habeas courts found:
The complainant's testimony that the offense occurred on March 30, 1993, a date within the statute of limitations for aggravated robbery, was sufficient to support the finding that the offense occurred "on or about" April 16, 1993; thus, the applicant fails to show that counsel is ineffective for failure to object to the indictment on such basis or failure to file a motion to squash [sic] on such basis, or failure to file a motion for instructed verdict or failing to follow up the applicant's pro se motion for arrest of judgment alleging such basis.
Hence, Rose has not shown that his indictment was constitutionally infirm or that his counsel was ineffective by failing to move for an instructed verdict on the basis of the indictment.
Therefore, with respect to his numerous allegations of ineffective assistance of counsel, Rose has not shown that Moncriffe's performance was deficient in any respect. He has failed to adduce sufficient evidence to overcome the strong presumption that his counsel rendered reasonable professional assistance. He, likewise, has failed to show that his attorney's performance prejudiced him or rendered his trial unfair or unreliable. Now, rather than *697 acknowledging his own culpability for his conduct, Rose seeks to blame his attorney for his conviction and sentence of imprisonment. As the Fifth Circuit has recognized, "the tendency, when all else fails, [is] to blame the lawyer." United States v. Faubion, 19 F.3d 226, 232 (5th Cir.1994). Blame in this case, however, lies squarely on Rose, not on his lawyer, who furnished reasonable professional assistance to the petitioner, whose actions simply were not defensible. As a consequence, Rose's ineffective assistance of counsel claim does not warrant federal habeas corpus relief.

B. Insufficient Evidence to Support Conviction

Rose claims that there was insufficient evidence presented at trial to support his conviction for aggravated robbery because: (1) the knife offered into evidence was not shown to be the knife utilized in the offense; (2) the knife was dusted for fingerprints but was not retained as evidence by the police; (3) his fingerprints were not found at the scene of the crime and there was no evidence that he had stolen any property; and (4) the complaining witness and the police officer gave conflicting testimony at trial.
Federal courts generally may not consider a petition for habeas corpus relief when the last state court to render judgment on the merits declined to address the petitioner's constitutional claims because he failed to meet a state procedural requirement. See Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); accord Edwards v. Carpenter, 529 U.S. 446, 451-52, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); Hughes v. Johnson, 191 F.3d 607, 619 (5th Cir.1999), cert. denied, 528 U.S. 1145, 120 S.Ct. 1003, 145 L.Ed.2d 945 (2000); Emery, 139 F.3d at 195; Muniz v. Johnson, 132 F.3d 214, 220 (5th Cir.), cert. denied, 523 U.S. 1113, 118 S.Ct. 1793, 140 L.Ed.2d 933 (1998). "[I]t is well settled that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir.1999) (citing Coleman, 501 U.S. at 729, 111 S.Ct. 2546; Amos, 61 F.3d at 339). When the last state court to render judgment on the merits does not disclose the basis for its opinion, a federal court will presume that the unexplained order follows the same reasoning as a prior state judgment, unless the petitioner adduces strong evidence to rebut this presumption. See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Corwin v. Johnson, 150 F.3d 467, 473 (5th Cir.), cert. denied, 525 U.S. 1049, 119 S.Ct. 613, 142 L.Ed.2d 548 (1998); Goodwin v. Collins, 910 F.2d 185, 187 (5th Cir.1990), cert. denied, 501 U.S. 1253, 111 S.Ct. 2896, 115 L.Ed.2d 1060 (1991); Russell v. Lynaugh, 892 F.2d 1205, 1210-11 (5th Cir.1989), cert. denied, 501 U.S. 1259, 111 S.Ct. 2909, 115 L.Ed.2d 1073 (1991). For a procedural bar to arise, the state court must include in its opinion a "plain statement" that its decision rests on adequate and independent state procedural grounds. See Harris, 489 U.S. at 261, 109 S.Ct. 1038; Michigan v. Chesternut, 486 U.S. 567, 571 n. 3, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); Kentucky v. Stincer, 482 U.S. 730, 735 n. 7, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987); Maryland v. Garrison, 480 U.S. 79, 83-84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); Delaware v. Van Arsdall, 475 U.S. 673, 678 n. 3, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); New York v. Class, 475 U.S. 106, 109-10, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). "However, this rule of Harris `applies only *698 when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law.'" Hogue v. Johnson, 131 F.3d 466, 493 (5th Cir.1997), cert. denied, 523 U.S. 1014, 118 S.Ct. 1297, 140 L.Ed.2d 334 (1998) (quoting Coleman, 501 U.S. at 739, 111 S.Ct. 2546); see Martin v. Maxey, 98 F.3d 844, 847 (5th Cir.1996).
A state court may expressly and unambiguously base its denial for relief on a state procedural default even if it alternatively reaches the merits of a petitioner's claims. See Harris, 489 U.S. at 264 n. 10, 109 S.Ct. 1038; Fisher, 169 F.3d at 300; Corwin, 150 F.3d at 473; Rogers v. Scott, 70 F.3d 340, 342 (5th Cir.1995), cert. denied, 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996); Amos, 61 F.3d at 341-42; Ellis v. Lynaugh, 873 F.2d 830, 838 (5th Cir.), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 384 (1989). As the Supreme Court has explained:
[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, Sykes curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interest in finality, federalism, and comity.
Harris, 489 U.S. at 264 n. 10, 109 S.Ct. 1038 (citing Wainwright v. Sykes, 433 U.S. 72, 86-87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); Fox Film Corp. v. Muller, 296 U.S. 207, 210, 56 S.Ct. 183, 80 L.Ed. 158 (1935)).
A state procedural ground is "adequate" when the procedural rule is "strictly and regularly followed" and applied evenhandedly in the vast majority of similar cases. Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988); see Dugger v. Adams, 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989); Hathorn v. Lovorn, 457 U.S. 255, 262-63, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982); Barr v. City of Columbia, 378 U.S. 146, 149, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964); Muniz, 132 F.3d at 220-21; Hogue, 131 F.3d at 485-86; Martin, 98 F.3d at 847; Amos, 61 F.3d at 339. The procedural default doctrine presumes that a state procedural ground is adequate and independent, and the burden is on the habeas petitioner to demonstrate otherwise. See Hughes, 191 F.3d at 614; Sones, 61 F.3d at 416-17. Once a state court has explicitly relied on procedural default as the basis for rejecting a claim, the petitioner may not obtain federal habeas relief absent a showing of cause for the default and resulting prejudice or that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. See Edwards, 529 U.S. at 451, 120 S.Ct. 1587; Coleman, 501 U.S. at 750, 111 S.Ct. 2546; Harris, 489 U.S. at 262, 109 S.Ct. 1038; Hughes, 191 F.3d at 614; Corwin, 150 F.3d at 472; Muniz, 132 F.3d at 220-21; Moore v. Roberts, 83 F.3d 699, 701-02 (5th Cir.1996), cert. denied, 519 U.S. 1093, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997); Amos, 61 F.3d at 339; Boyd v. Scott, 45 F.3d 876, 880 (5th Cir.1994), cert. denied, 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 855 (1995).
"The procedural default doctrine and its attendant `cause and prejudice' standard are `grounded in concerns of comity and federalism,' and apply alike whether the default in question occurred at trial, on appeal, or on state collateral *699 attack." Edwards, 529 U.S. at 451, 120 S.Ct. 1587 (quoting Coleman, 501 U.S. at 730, 111 S.Ct. 2546); see Murray v. Carrier, 477 U.S. 478, 490-92, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). "`This doctrine ensures that federal courts give proper respect to state procedural rules.'" Muniz, 132 F.3d at 220 (quoting Glover v. Cain, 128 F.3d 900, 902 (5th Cir.1997), cert. denied, 523 U.S. 1125, 118 S.Ct. 1811, 140 L.Ed.2d 949 (1998) (citing Coleman, 501 U.S. at 750-51, 111 S.Ct. 2546)). "`[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.'" Edwards, 529 U.S. at 451, 120 S.Ct. 1587 (quoting Coleman, 501 U.S. at 732, 111 S.Ct. 2546).
"Cause is defined as `something external to the petitioner, something that cannot fairly be attributed to him' that impedes his efforts to comply with the procedural rule." Moore, 83 F.3d at 704 (quoting Coleman, 501 U.S. at 753, 111 S.Ct. 2546); see Murray, 477 U.S. at 488, 106 S.Ct. 2639; Fairman v. Anderson, 188 F.3d 635, 643 (5th Cir.1999); Sharp, 107 F.3d at 286. Thus, Rose "must demonstrate that some objective factor external to his defense prevented him from raising this claim." Robison v. Johnson, 151 F.3d 256, 262-63 (5th Cir.1998), cert. denied, 526 U.S. 1100, 119 S.Ct. 1578, 143 L.Ed.2d 673 (1999) (citing United States v. Guerra, 94 F.3d 989, 993 (5th Cir.1996)); see McCleskey v. Zant, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); Murray, 477 U.S. at 488, 106 S.Ct. 2639. "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense." Guerra, 94 F.3d at 993 (citing Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir.1992)).
A pro se petitioner's ignorance of the legal significance of certain facts, however, does not constitute "cause," as such ignorance is not an objective, external factor preventing him from raising the claims in a prior petition. See Saahir v. Collins, 956 F.2d 115, 118 (5th Cir.1992). Similarly, "[a]ttorney ignorance or inadvertence is not `cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must `bear the risk of attorney error.'" Coleman, 501 U.S. at 753, 111 S.Ct. 2546 (quoting Murray, 477 U.S. at 488, 106 S.Ct. 2639); see Fairman, 188 F.3d at 643. While ineffective assistance of counsel is sufficient cause for excusing a procedural default, "attorney error short of ineffective assistance of counsel" in the constitutional sense "does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." Murray, 477 U.S. at 492, 106 S.Ct. 2639; see Edwards, 529 U.S. at 451, 120 S.Ct. 1587. "In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim," which generally must first be raised in state court. Id. (citing Murray, 477 U.S. at 489, 106 S.Ct. 2639). In this case, Rose has not shown that his trial or appellate counsel rendered ineffective assistance and, therefore, cannot avoid the procedural bar on that basis. See Tucker, 115 F.3d at 281; United States v. Walker, 68 F.3d 931, 934 (5th Cir.1995), cert. denied, 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996); Andrews, 21 F.3d at 628-29.
In addition to cause, Rose must show "actual prejudice" to overcome *700 the procedural bar. See Guerra, 94 F.3d at 994 (citing United States v. Shaid, 937 F.2d 228, 232 (5th Cir.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992)). A showing of prejudice requires the petitioner to prove not merely that the omission created a possibility of prejudice, but that it worked to his actual and substantial disadvantage. See United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); Russell v. Collins, 944 F.2d 202, 205 (5th Cir.), cert. denied, 501 U.S. 1278, 112 S.Ct. 30, 115 L.Ed.2d 1112 (1991). "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin, 98 F.3d at 849 (citing Saahir, 956 F.2d at 118).
In the alternative, Rose may defeat the procedural bar by showing that the court's failure to consider the claim would result in the fundamental miscarriage of justice. To demonstrate a fundamental miscarriage of justice in this context, the petitioner must establish that he is actually innocent of the crime of which he was convicted. See Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); Sawyer v. Whitley, 505 U.S. 333, 339-40, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); Murray, 477 U.S. at 496, 106 S.Ct. 2639; Corwin, 150 F.3d at 473; Muniz, 132 F.3d at 221; Callins v. Johnson, 89 F.3d 210, 213 (5th Cir.), cert. denied, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996); Ward v. Cain, 53 F.3d 106, 108 (5th Cir.1995). "[I]n this regard ... `actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623-24, 118 S.Ct. 1604 (citing Sawyer, 505 U.S. at 339, 112 S.Ct. 2514); see Callins, 89 F.3d at 213. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, `it is more likely than not that no reasonable juror would have convicted him.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 317-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).
Under Texas law, a challenge to the sufficiency of the evidence can only be raised on direct appeal, not in a state habeas corpus proceeding. See West, 92 F.3d at 1398 n. 18; Renz v. Scott, 28 F.3d 431, 432 (5th Cir.1994); Clark v. Texas, 788 F.2d 309, 310 (5th Cir.1986); Ex parte McLain, 869 S.W.2d 349, 350 (Tex.Crim. App.1994). Such a claim is not cognizable in a post-conviction, collateral attack. See West, 92 F.3d at 1398 n. 18; Renz, 28 F.3d at 432; Clark, 788 F.2d at 310; McLain, 869 S.W.2d at 350. Failure to raise a sufficiency of the evidence claim on direct appeal constitutes a procedural default under state law. See Renz, 28 F.3d at 432; Clark, 788 F.2d at 310.
In the case at bar, Rose did not advance a sufficiency of the evidence claim on direct appeal or in his petition for discretionary review. As a consequence, in his state habeas proceeding, the only sufficiency of the evidence claim he raised was rejected as procedurally barred. Specifically, the state trial court found that "[t]he applicant's claim of insufficient evidence to support the trial court's finding of a deadly weapon is not cognizable during habeas proceedings." Hence, the court's findings plainly state that the decision rests on adequate and independent state grounds. The Court of Criminal Appeals explicitly adopted the trial court's finding of procedural default when it denied Rose's state application for a writ of habeas corpus without written order on the findings of the trial court. See Ylst, 501 U.S. at 803, 111 S.Ct. 2590; Corwin, 150 F.3d at 473; Goodwin, 910 F.2d at 187; Russell, 892 F.2d at 1210-11.
With respect to the other sufficiency of the evidence claims Rose now attempts to raise, they are also procedurally barred, as *701 he has not exhausted his state court remedies with respect to those claims, having failed to bring them before the state's highest court with jurisdiction to review his conviction. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-40, 847-48, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); Duckworth v. Serrano, 454 U.S. 1, 3-4, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981); Fuller v. Johnson, 158 F.3d 903, 905 (5th Cir.1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir.1998); Murphy v. Johnson, 110 F.3d 10, 11 (5th Cir.1997); Sterling v. Scott, 57 F.3d 451, 453 (5th Cir.1995), cert. denied, 516 U.S. 1050, 116 S.Ct. 715, 133 L.Ed.2d 669 (1996). Any attempt to exhaust his remaining sufficiency of the evidence claims at this juncture, however, would be futile, as the time for appeal has expired and such a claim is not cognizable in a post-conviction, collateral attack. See West, 92 F.3d at 1398 n. 18; Renz, 28 F.3d at 432; Clark, 788 F.2d at 310; McLain, 869 S.W.2d at 350. As noted above, the failure to raise a sufficiency of the evidence claim on direct appeal constitutes a procedural default under state law. See Renz, 28 F.3d at 432; Clark, 788 F.2d at 310.
Although the Supreme Court has held that a state court must explicitly rely on a procedural default to preclude federal habeas review:
This rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.
Coleman, 501 U.S. at 735 n. 1, 111 S.Ct. 2546; see Gray v. Netherland, 518 U.S. 152, 161-62, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); Teague v. Lane, 489 U.S. 288, 298-99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); Horsley v. Johnson, 197 F.3d 134, 136-37 (5th Cir.1999); Emery, 139 F.3d at 195; Muniz, 132 F.3d at 220. Because the exhaustion requirement refers only to remedies still available at the time of the federal petition, it is satisfied if it is clear that the petitioner's claims are now procedurally barred under state law. See Gray, 518 U.S. at 161-62, 116 S.Ct. 2074 (citing Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); Engle v. Isaac, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)); Horsley, 197 F.3d at 136-37; Fuller, 158 F.3d at 905.
While the Texas Court of Criminal Appeals has not expressly ruled that Rose's additional sufficiency of the evidence claims are procedurally barred, this court need not await a decision from the Texas courts. It is well established that claims that have not been reviewed by the state courts may be found to be procedurally barred on federal habeas review. See Coleman, 501 U.S. at 735, 111 S.Ct. 2546; Horsley, 197 F.3d at 136-37; Fuller, 158 F.3d at 905-06; Emery, 139 F.3d at 195; Muniz, 132 F.3d at 220-22. Thus, as here, "when `it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless "judicial ping-pong" and hold the claim procedurally barred from habeas review.'" Sones, 61 F.3d at 416 (quoting Steele v. Young, 11 F.3d 1518, 1524 (10th Cir.1993)). Moreover, "a federal district court may, in the exercise of its discretion, raise a habeas petitioner's procedural default sua sponte and then apply that default as a bar to further litigation of petitioner's *702 claims." Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir.1998); see Johnson v. Cain, 215 F.3d 489, 495 (5th Cir. 2000); Fisher, 169 F.3d at 301-02.
Rose offers no evidence constituting sufficient cause for his failure to raise his sufficiency of the evidence claim on direct appeal, nor does he demonstrate actual prejudice as a result of the procedural default. He, likewise, produces no evidence that this court's failure to consider his claim would result in a fundamental miscarriage of justice, as he does not assert and makes no showing of actual innocence. Accordingly, this court is precluded from considering Rose's challenge to the sufficiency of the evidence due to a state procedural bar.

D. Ineffective Assistance of Counsel on Appeal

Rose contends that he received ineffective assistance of appellate counsel because his appellate counsel, Kristine Woldy ("Woldy"), failed to raise the ineffectiveness of trial counsel as a point of error on appeal.
A criminal defendant has a constitutional right to the effective assistance of counsel on direct appeal where, as in Texas, the appeal is a matter of right under state law. See Evitts v. Lucey, 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); Douglas v. California, 372 U.S. 353, 356, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Goodwin, 132 F.3d at 170. To render effective assistance, counsel on appeal "must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal." McCoy v. Court of Appeals of Wis., 486 U.S. 429, 438, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988). "In preparing and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve the client's interest to the best of his or her ability." Id.
When appellate counsel's deficiencies do not prevent appellate review, or counsel does not entirely fail to challenge the prosecution's case, to prevail on an ineffective assistance of counsel claim, the petitioner must show that counsel's errors were so serious that counsel was not functioning as the counsel guaranteed to the petitioner by the Sixth Amendment. See Ellis, 873 F.2d at 840; McCrae v. Blackburn, 793 F.2d 684, 688 (5th Cir.), cert. denied, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); Hamilton v. McCotter, 772 F.2d 171, 182 (5th Cir.1985). Unless there has been "actual or constructive complete denial of any assistance of appellate counsel," the two-prong test set forth in Strickland, requiring a showing that counsel's performance was deficient and that such deficiency prejudiced the defense, applies equally to a claim of ineffective assistance of appellate counsel. Sharp v. Puckett, 930 F.2d 450, 451-52 (5th Cir. 1991) (citing Strickland, 466 U.S. at 687, 104 S.Ct. 2052); see Jackson, 150 F.3d at 524; Goodwin, 132 F.3d at 170; United States v. Merida, 985 F.2d 198, 202 (5th Cir.1993).
If, however, the defendant "`was afforded almost no appellate representation whatever, and there were non-frivolous appeal issues,'" prejudice is presumed. Moss v. Collins, 963 F.2d 44, 47 (5th Cir.1992), cert. denied, 506 U.S. 1055, 113 S.Ct. 983, 122 L.Ed.2d 136 (1993) (quoting Lombard v. Lynaugh, 868 F.2d 1475, 1481 (5th Cir.1989)). "`Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.'" Penson v. Ohio, 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (quoting Strickland, 466 U.S. at 692, *703 104 S.Ct. 2052). As the Fifth Circuit explained in Sharp v. Puckett:
In Penson v. Ohio ..., the Supreme Court distinguished between two types of denial of effective assistance of appellate counsel: first, when the deficiency consists of failure to raise or properly brief or argue certain issues on appeal, and second, when there has been actual or constructive complete denial of any assistance of appellate counsel. The first type of case requires a showing of Strickland prejudice. When, however, the defendant is actually or constructively denied any assistance of counsel, prejudice is presumed, and neither the prejudice test of Strickland nor the harmless error test of Chapman v. California ... is appropriate.
930 F.2d 450, 451-52 (5th cir.1991) (citing Penson, 488 U.S. at 88, 109 S.Ct. 346; Chapman v. California, 386 U.S. 18, 22-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)) (emphasis in original).
Accordingly, in the instant case, where Rose was not actually or constructively denied representation, to prevail on his claim of ineffective assistance of appellate counsel, he must establish both that his appellate counsel's representation was deficient and that his appeal was prejudiced by this deficiency. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052; Jackson, 150 F.3d at 524; Moawad, 143 F.3d at 946; Goodwin, 132 F.3d at 170. Rose must demonstrate that counsel's performance "`fell beneath an objective standard of reasonable professional assistance.'" Moawad, 143 F.3d at 946 (quoting Gray v. Lynn, 6 F.3d 265, 268 (5th Cir.1993)). The court gives "`"great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment."'" Id. (quoting Gray, 6 F.3d at 268 (quoting Ricalday v. Procunier, 736 F.2d 203, 206 (5th Cir.1984))). In order to prove prejudice, the Fifth Circuit has generally required a habeas petitioner to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the appeal would have been different. See id. (citing Strickland, 466 U.S. at 694, 104 S.Ct. 2052); Duhamel v. Collins, 955 F.2d 962, 967 (5th Cir.1992); Sharp, 930 F.2d at 453. "`"A reasonable probability is a probability sufficient to undermine confidence in the outcome of the appeal."'" Moawad, 143 F.3d at 946 (quoting Gray, 6 F.3d at 269 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052)); see Williams, 16 F.3d at 634-35; Moss, 963 F.2d at 47; Thomas v. Lynaugh, 812 F.2d 225, 229 (5th Cir.), cert. denied, 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987).
In the past several years, the Fifth Circuit retreated somewhat from a strictly outcome determinative analysis of prejudice. See Jackson, 150 F.3d at 525; Goodwin, 132 F.3d at 174. Rather, the court held that, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, "[i]t is clear that under Federal law, as articulated by the Supreme Court of the United States, focus on mere outcome determination at the appellate level is defective." Jackson, 150 F.3d at 525 (citing Fretwell, 506 U.S. at 369, 113 S.Ct. 838); accord Goodwin, 132 F.3d at 174. The Supreme Court has observed that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman, 477 U.S. at 374, 106 S.Ct. 2574 (citing Strickland, 466 U.S. at 686, 104 S.Ct. 2052; Cronic, 466 U.S. at 655-57, 104 S.Ct. 2039). Hence, the Fifth Circuit declared that "`the presence or absence of prejudice, both with respect to claims of ineffective assistance of counsel at the trial and appellate *704 levels, hinges upon the fairness of the trial and the reliability of the judgment of conviction resulting therefrom.'" Jackson, 150 F.3d at 525 (quoting Goodwin, 132 F.3d at 174 (citing Ricalday, 736 F.2d at 208-09; McCrae, 793 F.2d at 688; Hamilton, 772 F.2d at 182)). "[T]he right to effective assistance of counsel, both at the trial and appellate level, `"is recognized not for its own sake, but because of the effect that it has on the ability of the accused to receive a fair trial."'" Id. (quoting Goodwin, 132 F.3d at 174 (quoting Fretwell, 506 U.S. at 369, 113 S.Ct. 838)).
More recently, however, the Supreme Court reaffirmed the general applicability of the Strickland prejudice test, rejecting the notion that Fretwell "modified or in some way supplanted the rule set down in Strickland." Williams, 529 U.S. at 391, 120 S.Ct. 1495. Yet, the Court recognized that, in some instances, the Strickland analysis may be affected by a fundamental fairness inquiry. See id. The Court explained:
It is true that while the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims, there are situations in which the overriding focus on fundamental fairness may affect the analysis. Thus, on the one hand, as Strickland itself explained, there are a few situations in which prejudice may be presumed. 466 U.S. at 692, 104 S.Ct. 2052. And, on the other hand, there are also situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate "prejudice." Even if a defendant's false testimony might have persuaded the jury to acquit him, it is not fundamentally unfair to conclude that he was not prejudiced by counsel's interference with his intended perjury. Nix v. Whiteside, 475 U.S. 157, 175-176, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).
Id. Nonetheless, the Supreme Court cautioned that cases such as Nix and Fretwell "do not justify a departure from a straightforward application of Strickland when the ineffectiveness of counsel does deprive the defendant of a substantive or procedural right to which the law entitles him." Id. at 1513 (citing Lockhart, 506 U.S. at 364, 113 S.Ct. 838; Nix, 475 U.S. at 157, 106 S.Ct. 988). Thus, unless Rose can establish that "`there is a reasonable probability, that but for counsel's unprofessional errors, the result of the proceeding would have been different,'" he cannot demonstrate prejudice in connection with his ineffective assistance of counsel claim. Id. at 1511-12 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
It is well settled that "[t]he Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." Ellis, 873 F.2d at 840; see Jones v. Barnes, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Thus, counsel is not ineffective merely because he fails to raise issues requested by the defendant. See Sharp, 930 F.2d at 452; Hamilton, 772 F.2d at 182. In fact, appointed counsel prosecuting an appeal on an adequate trial record is not constitutionally required to confer with the defendant about legal issues to be presented on appeal. See Hooks v. Roberts, 480 F.2d 1196, 1197-98 (5th Cir.1973), cert. denied, 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). Further, counsel is not ineffective for "failing to raise every possible point on appeal." Sharp, 930 F.2d at 452; see Wicker v. McCotter, 783 F.2d 487, 497 (5th Cir.), cert. denied, 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). Appellate counsel is obligated only to raise and brief those issues that are believed to have the best *705 chance of success. See Jones, 463 U.S. at 751-53, 103 S.Ct. 3308; Ellis, 873 F.2d at 840. "It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues." Mayo v. Lynaugh, 882 F.2d 134, 139 (5th Cir.1989), modified on other grounds, 893 F.2d 683 (5th Cir.1990) (citing Jones, 463 U.S. at 751, 103 S.Ct. 3308). Where an allegation of ineffective assistance of appellate counsel is based on counsel's failure to advance certain issues on appeal, courts have refused to find counsel ineffective when the proposed issues are without merit. See Williams, 16 F.3d at 635; Cantu v. Collins, 967 F.2d 1006, 1017 (5th Cir.1992), cert. denied, 509 U.S. 926, 113 S.Ct. 3045, 125 L.Ed.2d 730 (1993); Mendiola v. Estelle, 635 F.2d 487, 491 (5th Cir.1981); Hooks, 480 F.2d at 1197-98. In short, appellate counsel need not advance every argument, regardless of merit, urged by the appellant. See Evitts, 469 U.S. at 394, 105 S.Ct. 830; Jones, 463 U.S. at 751, 103 S.Ct. 3308. In the case at bar, Rose has failed to present any meritorious points of error that could have been raised on appeal. See Moss, 963 F.2d at 48.
The record reflects that Woldy filed an appellate brief presenting only those issues she deemed to have potential merit. The brief alleges that the prosecutor committed prosecutorial misconduct by asking appellant about the intimate details of appellant's sexual conduct with the complainant and that the trial court erred in denying appellant's motion for mistrial based on the prosecutor's inquiries. Rose contends that Woldy was ineffective for failing to raise points of error attacking his trial counsel's failure to file a motion to suppress or a motion for discovery. As discussed above, however, there was no legitimate basis for Moncriffe to move for suppression of the evidence or for discovery.
In fact, Woldy informed Rose in letters dated March 12, 1996, and February 21, 1997, that, absent clear errors on the face of the record, ineffective assistance of counsel claims are more properly raised on state habeas review than on direct appeal. In the second letter, Woldy explains that trial counsel's failure to file a motion for discovery provides no basis for relief unless Rose can show harm. She attempts to explain in painstaking detail that Rose is misinformed about the controlling law. She writes:
You said that "under the rules of evidence" the physical evidence must be in police custody & the alleged weapon must be photographed. You are incorrect on the law. All that is required to prove up an aggravated case is to have an alleged victim testify that the alleged robber had a weapon. If the jury believes the witness, that's enough. They do not have to produce the weapon that was used in court.

With regard to Rose's contention that trial counsel was ineffective for failing to move for suppression of the knife produced by Aldape, Woldy points out the high standard that must be satisfied to succeed on an ineffective assistance of counsel claim. She explains:
You also wanted me to complain that your lawyer didn't object to the admission of the weapon because the victim produced it rather than the prosecutor. I agree that he should have objected, and there were some arguments that he should have made, but the fact that the victim produced it wasn't one of them. To reach [sic] status of ineffective assistance of counsel by law, an error has to be bad enough so that a different result would probably have been reached by the jury if the error had not occurred. Because the testimony of the victim *706 about the weapon would have been legally sufficient without the weapon itself being admitted, the fact that he didn't object to the admission itself isn't a bad enough error to reach ineffective assistance of counsel by itself.
The standard of sufficiency of the evidence is very high. I read the record. Whether or not your trial lawyer asked for an instructed verdict on insufficient evidence, the evidence in the record is legally sufficient and no court of appeals would read it differently.
Hence, this is not an instance of appellate counsel failing to render effective assistance but of Rose's failing to heed the sound advice rendered by appellate counsel.
As the courts found on state habeas review, "The applicant fails to show that appellate counsel is ineffective for not raising on direct appeal the issue of ineffective assistance of trial court [sic]; appellate counsel cannot be faulted for choosing not to advance a meritless appellate claim." As a consequence, Rose's claim of ineffective assistance of appellate counsel does not merit federal habeas corpus relief.

D. Prosecutorial Misconduct

Rose contends that the State committed prosecutorial misconduct because the prosecutor: (1) introduced evidence of prior bad acts involving cases in which he was not convicted; (2) posed improper questions while cross-examining Raymond Griffin ("Griffin"), Rose's character witness, during the punishment phase of the trial; (3) improperly questioned Rose during cross-examination in the punishment phase of the trial; (4) made prejudicial statements during closing argument; (5) fabricated a deadly weapon and suppressed evidence; (6) stated that Rose had represented himself for part of the trial; (7) asked Rose if he obtained Aldape's address from the offense report; (8) questioned fingerprint examiners about items not admitted in evidence or about which they had no personal knowledge; (9) failed to notify Rose that the State would seek a finding of the use of a deadly weapon; and (10) commented that Rose's fingerprints not being found at the scene was irrelevant.
In habeas corpus proceedings, alleged prosecutorial misconduct during a state criminal trial is reviewed to determine whether it "`"so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process."'" Barrientes v. Johnson, 221 F.3d 741, 753 (5th Cir.2000), cert. dismissed, ___ U.S. ___, 121 S.Ct. 902, 148 L.Ed.2d 948 (2001) (quoting Ables v. Scott, 73 F.3d 591, 592 n. 2 (5th Cir.), cert. denied, 517 U.S. 1198, 116 S.Ct. 1696, 134 L.Ed.2d 795 (1996) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))); accord Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). Improper conduct by a state prosecutor is not of constitutional magnitude and will not warrant federal habeas corpus relief unless the conduct is so prejudicial that it rendered the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. See Darden v. Wainwright, 477 U.S. 168, 180-81, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); Dowthitt v. Johnson, 230 F.3d 733, 755 (5th Cir.2000), cert. denied. ___ U.S. ___, 121 S.Ct. 1250, 149 L.Ed.2d 156 (2001); Barrientes, 221 F.3d at 753; United States v. Parker, 877 F.2d 327, 332 (5th Cir.), cert. denied, 493 U.S. 871, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989); Jones, 864 F.2d at 356; Bell, 828 F.2d at 1095; Ortega v. McCotter, 808 F.2d 406, 408 (5th Cir.1987); Whittington v. Estelle, 704 F.2d 1418, 1421-23 (5th Cir.), cert. denied, 464 U.S. 983, 104 S.Ct. *707 428, 78 L.Ed.2d 361 (1983). "To constitute a due process violation, the prosecutorial misconduct must be `"of sufficient significance to result in the denial of the defendant's right to a fair trial."'" Greer, 483 U.S. at 765, 107 S.Ct. 3102 (quoting Bagley, 473 U.S. at 676, 105 S.Ct. 3375 (quoting Agurs, 427 U.S. at 108, 96 S.Ct. 2392)). "`A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" Barrientes, 221 F.3d at 753 (quoting Foy v. Donnelly, 959 F.2d 1307, 1317 (5th Cir.1992)). As the Fifth Circuit has noted, "`[a] prosecutor's improper [conduct] will, in itself, exceed constitutional limitations in only the most egregious cases.'" Ortega, 808 F.2d at 410-11 (quoting Menzies v. Procunier, 743 F.2d 281, 288-89 (5th Cir.1984)). "`[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" Barrientes, 221 F.3d at 753 (quoting Darden, 477 U.S. at 181, 106 S.Ct. 2464); see Dowthitt, 230 F.3d at 755.
The Fifth Circuit has set forth a two-step analysis for reviewing an assertion of prosecutorial misconduct. See United States v. Wise, 221 F.3d 140, 152 (5th Cir.), petition for cert. filed ___ U.S. ___, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2000); United States v. Lankford, 196 F.3d 563, 574 (5th Cir.1999), cert. denied, 529 U.S. 1119, 120 S.Ct. 1984, 146 L.Ed.2d 812 (2000); United States v. Gallardo-Trapero, 185 F.3d 307, 320 (5th Cir.1999), cert. denied, 528 U.S. 1127, 120 S.Ct. 961, 145 L.Ed.2d 834 (2000). The first step is to determine whether the prosecutor made an improper remark. See Wise, 221 F.3d at 152 (citing Gallardo-Trapero, 185 F.3d at 320); Lankford, 196 F.3d at 574. In deciding whether remarks made or questions asked by a prosecutor were improper, it is necessary to view them in context. See Greer, 483 U.S. at 765-66, 107 S.Ct. 3102; Wise, 221 F.3d at 152; Barrientes, 221 F.3d at 780; Gallardo-Trapero, 185 F.3d at 320 (citing United States v. Washington, 44 F.3d 1271, 1278 (5th Cir.), cert. denied, 514 U.S. 1132, 115 S.Ct. 2011, 131 L.Ed.2d 1010 (1995)). "If an improper remark was made, the second step is to evaluate whether the remark affected the substantial rights of the defendant[]." Wise, 221 F.3d at 152; see United States v. Montgomery, 210 F.3d 446, 454 (5th Cir.2000); Lankford, 196 F.3d at 574; Gallardo-Trapero, 185 F.3d at 320; see also Greer, 483 U.S. at 766, 107 S.Ct. 3102 (citing Darden, 477 U.S. at 179, 106 S.Ct. 2464). In determining whether the prosecutor's remarks prejudiced the defendant's substantive rights, the court assesses "`(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt.'" Wise, 221 F.3d at 153 (quoting Gallardo-Trapero, 185 F.3d at 320); accord United States v. McWaine, 243 F.3d 871, 873-74 (5th Cir.2001); Montgomery, 210 F.3d at 454-55 (citing United States v. Tomblin, 46 F.3d 1369, 1389 (5th Cir.1995)); Lankford, 196 F.3d at 574; United States v. Wyly, 193 F.3d 289, 299 (5th Cir.1999).
In Texas, there are four areas in which jury argument is proper: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. See Wilson v. State, 7 S.W.3d 136, 147 (Tex.Crim.App. 1999); Shannon v. State, 942 S.W.2d 591, 597 (Tex.Crim.App.1996); Banda v. State, 890 S.W.2d 42, 61 (Tex.Crim.App.1994), cert. denied, 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); Coleman v. State, 881 S.W.2d 344, 358 (Tex.Crim.App.1994), cert. denied, 513 U.S. 1096, 115 S.Ct. 763, 130 L.Ed.2d 660 (1995); Coble v. State, 871 *708 S.W.2d 192, 204 (Tex.Crim.App.1993), cert. denied, 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994); DeLeon v. State, No. 07-00-0189-CR, 2001 WL 246580, at *9 (Tex.App.Amarillo Mar.13, 2001, no pet. h.). Under Texas law, "it is well settled that the prosecutor may argue his opinions concerning issues in the case so long as the opinions are based on the evidence in the record and not as constituting unsworn testimony." McKay v. State, 707 S.W.2d 23, 37 (Tex.Crim.App.1985), cert. denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); accord Penry v. State, 903 S.W.2d 715, 756 (Tex.Crim.App.), cert. denied, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995).
Here, the actions taken and arguments presented by the prosecutor were not improper, nor did they infect the entire trial with such unfairness that Rose was denied due process. Rose's claims regarding prosecutorial misconduct are either conclusory, factually inaccurate, or non-prejudicial.

1. Unadjudicated Offenses

Rose complains that the prosecutor attempted to introduce evidence of his prior arrest for robbery, an offense for which he was not convicted. This arose in the context of the prosecutor's cross-examination of Rose. After Rose testified on direct examination that he had previously used drugs and had been convicted of drug crimes, the prosecutor asked him if he had ever been in trouble for reasons other than drug use. Rose responded that he had only been convicted of drug-related offenses. When asked if drug activities were the only things for which he had been arrested, Rose acknowledged that they were not. Rose then testified that he had been arrested "[f]or various things  hanging around the wrong crowd."
When the prosecutor again asked about the offenses for which Rose had been arrested, Moncriffe objected before Rose could respond, and a bench conference ensued outside the presence of the jury. During the bench conference, the trial court noted that Rose had in effect invited the question by his response that he never had any problems other than drug-related offenses. The prosecutor informed the court that trial counsel had been sent a notice concerning the use of extraneous offenses, specifically, Rose's arrest for robbery in Jefferson County, Texas. After the jury was removed, the prosecutor advised the court that he would withdraw the question "to be safe." Upon the jury's return, the prosecutor properly cross-examined Rose about his prior drug-related convictions. See TEX. R. CRIM. EVID. 609; Theus v. State, 845 S.W.2d 874, 880 (Tex.Crim.App.1992). The jury heard no testimony about any prior offenses for which Rose was arrested but not convicted. The state habeas courts found that "[t]he State properly elicited evidence from the testifying applicant concerning his prior convictions, and the jury was never presented with evidence of specific, unadjudicated offenses." Because the jury never heard any evidence of specific, unadjudicated offenses during the guilt/innocence phase of the trial, Rose cannot show that the prosecutor's question infected the trial with unfairness or prejudiced his defense.

2. Cross-Examination of Griffin

During the punishment phase of the trial, Griffin, a character witness for Rose, testified that he had met Rose in a Bible study group and that he was a positive influence on the group. He further testified that he believed Rose would be a productive member of society if the trial court imposed a minimum sentence. Defense counsel elicited testimony from Griffin *709 that he was aware of Rose's instant conviction for armed robbery as well as his prior experiences with the criminal justice system. On cross-examination, the prosecutor asked Griffin if he was aware of the circumstances of the aggravated robbery, specifically, that Rose had threatened with a deadly weapon a female who was holding a small infant. Griffin responded that he was aware of the incident because he had learned about it from Rose, indicating that he would not be present in court had Rose not shown remorse.
Rose argues that this questioning was improper because he did not use a deadly weapon and never assaulted Aldape. Rose seems to overlook the fact that the jury had already found him guilty of robbing Aldape at knifepoint. This line of questioning constituted proper impeachment of a character witness at the punishment phase of the trial, and Moncriffe did not object to it. As the state habeas courts found, "[t]he State properly attempted to impeach character witness Raymond Griffin's testimony by asking about his knowledge of the details of the instant offense for which the applicant had been convicted." In addition, Rose does not state how this questioning prejudiced him or rendered the trial unfair.

3. Cross-Examination of Rose during Punishment Phase

Rose also complains about certain cross-examination during the punishment phase of the trial. He contends that the prosecutor tried to get him to admit that he had lied to the jury when he testified in the guilt/innocence phase. When the prosecutor cross-examined Rose during the punishment phase, after Griffin had given the above-referenced testimony, Miles asked Rose if he was lying when he told the jury during the guilt/innocence phase that he did not commit the offense in question. It is well-recognized, however, that "[a] defendant makes his character an issue when he testifies." Tomblin, 46 F.3d at 1388. "The government is entitled to cross-examine properly and effectively a witness in an effort to elicit the truth." Id. (citing United States v. Havens, 446 U.S. 620, 626-27, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980)). In this instance, Rose put his character at issue when he testified during both the guilt/innocence and punishment stages of the trial.
At the commencement of the punishment phase, Rose pleaded true to the two enhancement paragraphs of the indictment, the first alleging a 1990 conviction for delivery of cocaine and the second alleging a 1990 conviction for possession of cocaine, and stipulated to his penitentiary packets for these offenses as well as a 1988 conviction for possession of cocaine, which the court admitted as exhibits. The prosecutor then asked, "You are a four time convicted felon, right?" Despite the undisputed evidence, Rose denied that he had been convicted four times. Again, he apparently overlooked the fact that he had been convicted in the pending case of aggravated robbery. The prosecutor's questioning of Rose was proper for impeachment purposes. See TEX. R. CRIM. EVID. 607. On state habeas review, the courts, likewise, found that "[t]he State, when cross-examining the applicant, properly attempted to impeach the applicant; thus, the applicant fails to show prosecutorial misconduct."

4. Comments During Closing Argument

Rose further complains that during closing argument, the prosecutor referred to Rose as a "creature," stated that he was not a good enough crook to steal, inferred that he used drugs at the time of the offense, mentioned that Rose had subpoena *710 power, and suggested that the police investigation was improper.
In the case at bar, these remarks are proper under both federal and state law. "A prosecutor's assertion of what he believes the evidence will show and has shown is not error." Ortega, 808 F.2d at 410. With regard to the first comment, it must be considered in context. Miles argued:
Talk about taking liberty from a human being.... This is what this is all about. Criminal law is written because the only kind of people  only kind of creatures that walk the face of the Earth that can do something as despicable [as] in this case, it takes a human being to do it.
Thus, rather than calling Rose a "creature," he actually pointed out that only human beings can be sufficiently depraved to commit the kind of offense in question. When Moncriffe objected to the reference to "creatures," the trial court overruled the objection, noting that "[t]his is argument." Moreover, the prosecutor's comment was a reasonable inference from the evidence. See Broussard v. State, 910 S.W.2d 952, 959 (Tex.Crim.App.1995), cert. denied, 519 U.S. 826, 117 S.Ct. 87, 136 L.Ed.2d 44 (1996) (argument comparing defendant to dormant volcano was reasonable inference from the evidence); Burns v. State, 556 S.W.2d 270, 285 (Tex.Crim. App.), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977) (reasonable inference from evidence to argue that the defendant was an "animal" based on brutal circumstances of the crime). Rose also has not shown how the prosecutor's remark caused his trial to be fundamentally unfair. See Darden, 477 U.S. at 181-82, 106 S.Ct. 2464 (comment that the defendant was an "animal" did not render the trial unfair).
With regard to Miles's comment that Rose "wasn't a good enough crook to get out of there the T.V., V.C.R. and microwave on foot," it was also a reasonable inference from the evidence. The record reflects that while Aldape's apartment contained valuable property such as a television, V.C.R., and microwave, Rose merely stole a class ring, a pager, and $100 in cash, suggesting that he was not a very accomplished thief. See Jordan v. State, 646 S.W.2d 946, 948 (Tex.Crim.App.1983) (permissible to draw from the facts in evidence all reasonable, fair, and legitimate inferences). Similarly, the prosecutor's reference to Rose's use of drugs during the course of the offense was a proper inference from the evidence and an accurate summary of Rose's testimony that he "started to do some drugs" in Aldape's apartment on the date in question.
With respect to the prosecutor's reference to subpoena power, the record reflects that Miles argued: "Let's talk about the fact of this case. Let me point out one thing real quick. He's got subpoena power too." Moncriffe objected: "I object to him saying that I have a burden of proof. That's the prosecutor's job, not mine." The trial court overruled the objection, reasoning: "It's invited argument. He can  whoever those people were listed up there, he can bring them in here, too, if he thinks they have something important to say." This comment was made in response to defense counsel's earlier argument that the State had not produced certain witnesses. An argument made in rebuttal to defense argument is acceptable, even if otherwise improper. See Darden, 477 U.S. at 181-82, 106 S.Ct. 2464; Smith v. State, 898 S.W.2d 838, 845 (Tex.Crim. App.), cert. denied, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995) (State's argument that defendant was not telling the truth was proper response to defendant's argument that jury had to decide which party to believe). In any event, Rose has *711 not demonstrated that this argument prejudiced his defense or rendered his trial unfair.
As to the investigation performed by the police, Miles suggested in his closing argument that the police investigation might have been inadequate, noting that the police officer who first arrived at the scene had been on the streets only a month. This was a proper inference from the evidence and an accurate summary of the experience level of Chappell, who testified, "I hit the streets in February of 1993." Rose does not explain how this comment constituted prosecutorial misconduct or prejudiced his case. Indeed, a concession by the prosecutor that the police investigation might have been flawed would appear to be beneficial to the accused rather than harmful.
In summary, as the state habeas courts found: "The complained-of State's jury arguments were either proper inferences from the evidence, proper responses to trial counsel's earlier jury argument, or proper summaries of the evidence. As such, the applicant fails to show that the State's jury arguments constituted prosecutorial misconduct." The state habeas courts further held: "In the alternative, error, if any, in any of the State's complained-of jury arguments had no impact on the jury in the light of the existence of the other evidence." Rose fares no better on federal habeas corpus review.

5. Fabrication of Deadly Weapon and Suppression of Evidence

Rose further contends that the prosecutor fabricated a deadly weapon and suppressed evidence. Rose appears to argue that while the indictment alleges the use of a deadly weapon, because the police never seized the actual knife used in the offense and the grand jury was never shown the actual knife, the prosecutor fabricated a knife at trial. This assertion is completely groundless. There is no evidence in the record of any fabricated evidence. As previously discussed, the knife used at trial was admissible as a representation of the knife used in the crime.
Rose also claims that the prosecutor suppressed evidence by failing to disclose that the police did not retain the actual knife used in the offense and did not have Rose's fingerprints on the glass described by Aldape. As noted above, there is no evidence in the record that any Brady material existed or that any evidence favorable to Rose was suppressed. Moncriffe concedes that he had access to everything in the State's file and states in his affidavit that he was aware that no prints were taken that could connect Rose to the offense. In addition, the fact that the State could not establish a fingerprint match was brought out during the trial and mentioned in closing argument. Hence, Rose's claims of fabricated and suppressed evidence are totally unfounded. The state habeas courts, likewise, concluded: "Based on the evidence elicited at trial, the applicant fails to show that the State `fabricated' the knife as the weapon used during the offense; that the State failed to disclose that a knife was not used during the offense; and, that the State failed to disclose that there were no fingerprints on the glass; thus, the applicant fails to show prosecutorial misconduct based on such allegations."

6. Self-Representation

Rose alleges that the prosecutor engaged in misconduct because he told the jury that Rose had represented himself for part of the trial. The statement of facts indicates that when Rose testified in the guilt/innocence phase, Miles asked, "Mr. Rose, for a period of time you represented yourself in this case, didn't you?" Rose *712 replied, "No." After Moncriffe objected to the question, a bench conference ensued in which Miles explained that the record contained a number of motions Rose filed pro se, including a sworn affidavit he submitted in the case that was admitted in evidence, adding that he intended to impeach Rose. The court cautioned, "I do not want to hear any more reference to him representing himself. That's bumping the wire. Thank you." The prosecutor did not pursue this line of questioning. In light of his numerous pro se motions and affidavit, Rose has not established that the questioning was improper. In any event, he replied in the negative. Under the circumstances, Rose has made no showing that this question was prejudicial or rendered his trial unfair. See Darden, 477 U.S. at 181, 106 S.Ct. 2464.

7. Offense Report

Rose maintains that the prosecutor committed misconduct by asking him if he got Aldape's street address from looking at the offense report in the case. During the cross-examination of Rose, Miles questioned him about an affidavit he wrote that included Aldape's exact street address, "5801 Sun Forest, Houston, Texas, Harris County, apartment 202." Moncriffe objected, stating, "Your Honor, he couldn't look at the offense report." The trial court sustained the objection. Rose claims that this questioning was prejudicial because Miles seemed to be accusing him of possessing privileged information, while knowing that Rose did not have access to the offense report. Because Moncriffe concedes that the prosecutor's file was completely open to defense counsel, it was reasonable for Miles to assume that his attorney had shared the information contained in the offense report with Rose, especially in view of the unusually precise manner in which the address is stated. The state habeas courts concluded that "[t]he applicant fails to show prosecutorial misconduct based on his habeas allegation that the State obtained an address from the offense report `knowing' that the applicant had no access to the report, an allegation that is without merit." In any event, the objection was sustained, and Rose never answered the question. There is nothing in the record to suggest that this questioning harmed Rose or led to his ultimate conviction. Consequently, it is insufficient to raise a constitutional issue cognizable on federal habeas corpus review.

8. Questioning of Fingerprint Examiners

Rose challenges three occasions on which the prosecutor posed questions to latent fingerprint examiners about items not admitted in evidence or about which they had no personal knowledge. In the first instance, Miles was questioning J.C. Falco ("Falco"), a latent fingerprint examiner with the Houston Police Department ("HPD"), about the print card envelope in which Falco placed fingerprints gathered from the crime scene. Miles asked Falco if he could remember how many prints he had lifted from each item in Aldape's apartment; Falco responded that he would have to refer to the offense report. Moncriffe objected on the ground that Falco lacked personal knowledge and should not be allowed to refer to the offense report. The trial court sustained the objection. In the next instance, as Falco examined the contents of an envelope, Miles asked him what was contained in the envelope. Falco replied, "The latent print card." Moncriffe objected that Falco was testifying about documents not admitted in evidence, and the court sustained the objection. In the final instance, Miles was examining Walter L. Stairhime ("Stairhime"), another latent fingerprint examiner for the HPD, and asked him if he knew the source of the *713 fingerprints submitted by Falco. Moncriffe objected again on the ground that Stairhime lacked personal knowledge. The court interjected, "If you know from your own personal knowledge," and Stairhime stated that he did not. Because Moncriffe's objections were sustained or the witnesses were precluded from giving testimony in these areas, Rose has not shown that he suffered prejudice of constitutional proportion as a result of these rather routine questions.

9. Notification of Affirmative Finding of the Use of a Deadly Weapon

Rose claims that the prosecutor failed to notify him that the State would seek an affirmative finding of the use of a deadly weapon. The allegation is refuted by the record. The indictment clearly states, "the Defendant did then and there use and exhibit a deadly weapon, to-wit: A KNIFE." Thus, the indictment gave Rose adequate notice of the State's intent to seek an affirmative finding of a deadly weapon at trial. See Brooks v. State, 847 S.W.2d 247, 248-49 (Tex.Crim.App.1993); Ex parte Grettenberg, 790 S.W.2d 613, 614 (Tex.Crim.App.1990). On state habeas review, the courts recognized, "The indictment in the instant case alleged the use of a `deadly weapon, to-wit: a knife,'" and found, "Based on the allegation of a deadly weapon in the indictment, the applicant fails to show that the State did not notify the applicant that the State would seek a finding of a deadly weapon." Hence, Rose's claim is completely groundless.

10. Lack of Fingerprint Match

Finally, Rose complains that the prosecutor's closing argument was prejudicial and denied him a fair trial because the prosecutor stated that the lack of a fingerprint match was irrelevant. The statement of facts reflects that Miles actually argued without objection:
Aldape told the fingerprint man where to lift the fingerprints. Turned out didn't match anybody. I don't know what that's got to do with anything.
On state habeas review, the trial court found that "trial counsel lodged no objection to the State's argument about fingerprints not matching anyone" and held, "The applicant is procedurally barred from advancing his complainants [sic] concerning the State's jury argument about the fingerprints not matching anybody based on the lack of objection to such argument." The Texas Court of Criminal Appeals explicitly adopted the trial court's finding of procedural default when it denied Rose's state application for a writ of habeas corpus without written order on the findings of the trial court. See Ylst, 501 U.S. at 803, 111 S.Ct. 2590; Corwin, 150 F.3d at 473; Goodwin, 910 F.2d at 187; Russell, 892 F.2d at 1210-11.
This ruling is consistent with the Texas Court of Criminal Appeals' well-established rule that a defendant's failure to object at trial will procedurally bar him from raising such objections later. See Hughes, 191 F.3d at 614; Muniz, 132 F.3d at 221; Hogue, 131 F.3d at 487-88, 492; Rogers, 70 F.3d at 342; Nichols v. Scott, 69 F.3d 1255, 1278 n. 44 (5th Cir.1995), cert. denied, 518 U.S. 1022, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996); Amos, 61 F.3d at 341-43; Cockrell v. State, 933 S.W.2d 73, 89 (Tex.Crim.App.1996), cert. denied, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997) (defendant's failure to object to jury argument or failure to pursue to an adverse ruling his objection forfeits right to complain about argument on appeal). Moreover, the Supreme Court has recognized that the contemporaneous objection rule constitutes an adequate and independent state ground for purposes of federal *714 habeas corpus review. See Sykes, 433 U.S. at 86-87, 97 S.Ct. 2497. The Fifth Circuit "has consistently held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims." Fisher, 169 F.3d at 300-01 (citing Sharp, 107 F.3d at 285-86; Nichols, 69 F.3d at 1280 n. 48); accord Hughes, 191 F.3d at 614; Corwin, 150 F.3d at 473; Amos, 61 F.3d at 345.
Rose offers no evidence constituting sufficient cause for his failure to object to the prosecutor's argument, nor does he demonstrate actual prejudice as a result of the procedural default. He, likewise, produces no evidence that this court's failure to consider his claim would result in a fundamental miscarriage of justice, as he makes no showing of actual innocence. Accordingly, this court is precluded from considering Rose's challenge to Miles's comment due to a procedural bar. See Muniz, 132 F.3d at 221-22; Hogue, 131 F.3d at 498.
In any event, Miles's remark was an accurate summary of the testimony concerning the lack of a fingerprint match and a reasonable inference from the evidence. See Jordan, 646 S.W.2d at 948. The state habeas courts, likewise, found, "In the alternative, the State's jury argument about the fingerprints not matching anybody is a proper inference from the evidence." Thus, notwithstanding the procedural bar, Rose's claim fails on the merits.
In essence, all of Rose's claims regarding prosecutorial misconduct are either conclusory, inaccurate, or fail to show prejudice. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition ..., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." Ross, 694 F.2d at 1011. Mere conclusory allegations, such as those made by Rose, are insufficient to raise constitutional claims on federal habeas corpus review. See Perillo v. Johnson, 79 F.3d 441, 444 (5th Cir.1996); Smallwood v. Johnson, 73 F.3d 1343, 1351 (5th Cir.), cert. denied, 519 U.S. 883, 117 S.Ct. 212, 136 L.Ed.2d 146 (1996); Johnson v. Scott, 68 F.3d 106, 112 (5th Cir.1995), cert. denied, 517 U.S. 1122, 116 S.Ct. 1358, 134 L.Ed.2d 525 (1996); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir.1990); Schlang v. Heard, 691 F.2d 796, 799 (5th Cir.1982), cert. denied, 461 U.S. 951, 103 S.Ct. 2419, 77 L.Ed.2d 1310 (1983). The court need not "`blindly accept speculative and inconcrete claims'" as the basis upon which to grant relief. West, 92 F.3d at 1399-1400 (quoting Ellis, 873 F.2d at 840); accord Young v. Herring, 938 F.2d 543, 560 n. 12 (5th Cir.1991), cert. denied, 503 U.S. 940, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992). "A habeas petitioner must make specific allegations; `conclusory allegations unsupported by specifics' or `contentions that in the face of the record are wholly incredible'" will not entitle a petitioner to federal habeas corpus relief. Perillo, 79 F.3d at 444 (quoting Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)). Accordingly, Rose's claims of prosecutorial misconduct provide no basis for relief.

E. Failure to Instruct Jury on Lesser Included Offense

Finally, Rose claims that the trial court erred in denying his pro se motion for new trial because the court failed to instruct the jury on the lesser included offense of robbery. To serve as a basis for federal habeas corpus relief, a state court's jury instruction must have "`by itself so infected the entire trial that the resulting conviction violates due process.'" Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) *715 (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)); accord McGuire, 502 U.S. at 71-72, 112 S.Ct. 475; Mayabb v. Johnson, 168 F.3d 863, 866 (5th Cir.), cert. denied, 528 U.S. 969, 120 S.Ct. 409, 145 L.Ed.2d 319 (1999); Livingston v. Johnson, 107 F.3d 297, 312 (5th Cir.), cert. denied, 522 U.S. 880, 118 S.Ct. 204, 139 L.Ed.2d 141 (1997). Relief will not be afforded when the charge is merely undesirable, erroneous, or even universally condemned. See Henderson, 431 U.S. at 154, 97 S.Ct. 1730 (quoting Cupp, 414 U.S. at 146, 94 S.Ct. 396); Kinnamon v. Scott, 33 F.3d 462, 465 (5th Cir.1994). Although a defendant is entitled to have the jury instructed on requested defense theories that have a foundation in the evidence, "[t]he trial court is not required to instruct the jury on a defense theory if the evidence is insufficient as a matter of law for the defendant to prevail on that theory." Sullivan v. Blackburn, 804 F.2d 885, 887 (5th Cir.1986), cert. denied, 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987). On collateral review, a federal court "must consider whether, under the totality of the circumstances, the errors complained of were so gross or the trial was so fundamentally unfair that the petitioner's constitutional rights were violated." Boyd, 45 F.3d at 880. Thus, improper jury instructions in state criminal trials generally do not give rise to federal habeas corpus relief. See Tarpley v. Estelle, 703 F.2d 157, 159 (5th Cir.), cert. denied, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983).
Absent a violation of the Constitution, federal courts defer to the state courts' interpretation of state law as to whether a lesser-included-offense instruction is warranted. See Creel, 162 F.3d at 391. Under Texas law, an offense is a lesser included offense if:
(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
(4) it consists of an attempt to commit the offense charged or an otherwise included offense.
TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 1993). In determining whether an instruction on a lesser included offense is required under Texas law, a two-step analysis is used: "first, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense." Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex.Crim.App.), cert. denied, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); see Alexander, 775 F.2d at 600 (citing Johnson v. State, 623 S.W.2d 654, 657 (Tex.Crim.App.1981)); Arevalo v. State, 970 S.W.2d 547, 548 (Tex. Crim.App.1998); Skinner v. State, 956 S.W.2d 532, 543 (Tex.Crim.App.1997), cert. denied, 523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). "It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." Id. (citing Bignall v. State, 887 S.W.2d 21, *716 24 (Tex.Crim.App.1994)). As the Texas Court of Criminal Appeals has explained:
The credibility of evidence and whether it is controverted or conflicts with other evidence in the case may not be considered in determining whether a defensive charge or an instruction on a lesser included offense should be given. When evidence from any source raises a defensive issue or raises an issue that a lesser included offense may have been committed and a jury charge on the issue is properly requested, the issue must be submitted to the jury. It is then the jury's duty, under the proper instructions, to determine whether the evidence is credible and supports the defense or the lesser included offense.
Moore v. State, 574 S.W.2d 122, 124 (Tex. Crim.App.1978). If, however, the defendant presents no evidence, and there is no evidence otherwise showing he is guilty only of a lesser included offense, then a charge on a lesser included offense is not required. See Bignall, 887 S.W.2d at 24.
Under Texas law, Rose's jury charge claim was not preserved for review and is regarded as procedurally defaulted because Rose did not request an instruction or object to the trial court's failure to include a lesser-included-offense instruction in the charge. See Posey v. State, 966 S.W.2d 57, 61 (Tex.Crim.App.1998). "Texas courts have consistently held that it is not error to fail to charge on a lesser included offense when no request for such a charge is made." Anderson, 18 F.3d at 1220; see, e.g., Posey, 966 S.W.2d at 60-61; Thomas v. State, 701 S.W.2d 653, 656 (Tex. Crim.App.1985); Hunter v. State, 647 S.W.2d 657, 658 (Tex.Crim.App.1983); Boles v. State, 598 S.W.2d 274, 278 (Tex. Crim.App.1980); Hanner v. State, 572 S.W.2d 702, 707 (Tex.Crim.App.1978), cert. denied, 440 U.S. 961, 99 S.Ct. 1504, 59 L.Ed.2d 774 (1979). Hence, in view of the deference accorded to state law in this area, "an improper jury instruction rarely justifies federal habeas relief absent a proper objection in the trial court." Mayabb, 168 F.3d at 866 (citing Henderson, 431 U.S. at 154, 97 S.Ct. 1730).
In any event, Rose has offered no evidence that the trial court's omission of a jury instruction on robbery was an abuse of discretion, much less that it was so grave as to amount to a denial of his constitutional right to substantive due process. See Lassiter v. Department of Social Servs., 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). While robbery is a lesser included offense within the offense of aggravated robbery, there is no evidence in the record that would permit a rational jury to infer that Rose was guilty only of robbery. Rather, Aldape consistently testified that Rose robbed her at knifepoint, while Rose denied that any robbery occurred. Additionally, Rose has not shown that the court's failure to charge the jury on robbery "`had a substantial and injurious effect or influence in determining the jury's verdict.'" Mayabb, 168 F.3d at 866 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). In fact, Rose has not shown that there is a reasonable probability that the verdict might have been different had the trial court's charge included an instruction on robbery. See Lisenba v. California, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941); Kirkpatrick v. Blackburn, 777 F.2d 272, 278 (5th Cir.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986).
Moreover, although the Supreme Court has expressly declined to decide the issue, the Fifth Circuit has held that in a noncapital case, "`the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue.'" Creel, 162 F.3d at 390 *717 (quoting Valles v. Lynaugh, 835 F.2d 126, 127 (5th Cir.1988) (citing Alexander, 775 F.2d at 601)); see Beck v. Alabama, 447 U.S. 625, 638 n. 14, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); Easter v. Estelle, 609 F.2d 756, 758 (5th Cir.1980); Murphy v. State, 26 S.W.3d 502, 505 (Tex.App.  El Paso 2000, pet. ref'd). Further, "[n]o Texas court has expressly held that a lesser-included offense instruction must be given as a matter of due process under either the federal or Texas constitutions." Id. Therefore, because only errors of constitutional magnitude are cognizable on federal habeas review, Rose's challenge to the trial court's charge must be rejected.

VI. Certificate of Appealability

Furthermore, Rose is not entitled to the issuance of a certificate of appealability. An appeal from a judgment denying federal habeas corpus relief may not proceed unless a judge issues a certificate of appealability. See 28 U.S.C. § 2253; FED. R. APP. P. 22(b). The standard for granting a certificate of appealability, like that for granting a certificate of probable cause to appeal under prior law, requires the petitioner to make a substantial showing of the denial of a federal constitutional right. See Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); Miller, 200 F.3d at 280; Davis, 158 F.3d at 809; Whitehead, 157 F.3d at 386; Hallmark v. Johnson, 118 F.3d 1073, 1077 (5th Cir.), cert. denied, 522 U.S. 1003, 118 S.Ct. 576, 139 L.Ed.2d 415 (1997); see also Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). In making that substantial showing, the petitioner need not establish that he should prevail on the merits. Rather, he must demonstrate that the issues are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. See Slack, 529 U.S. at 483-84, 120 S.Ct. 1595; Barefoot, 463 U.S. at 893 n. 4, 103 S.Ct. 3383; Davis, 158 F.3d at 809; Hallmark, 118 F.3d at 1076. Any doubt regarding whether to grant a certificate of appealability is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. See Miller, 200 F.3d at 280-81 (citing Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir.), cert. denied, 522 U.S. 963, 118 S.Ct. 399, 139 L.Ed.2d 312 (1997)).
Rose has not shown that any of the issues raised by his claims are subject to debate among jurists of reason. Rather, the factual and legal questions advanced by Rose are not novel and have been consistently resolved adversely to his position. In addition, the questions presented are not worthy of encouragement to proceed further. Therefore, Rose has failed to make a sufficient showing to merit the issuance of a certificate of appealability.

VII. Conclusion

In summary, federal habeas corpus relief is not warranted under any theory advanced by Rose. The state courts reached the same conclusion, as reflected by the Texas Court of Criminal Appeals' denial of Rose's state application for writ of habeas corpus without written order on the findings of the trial court. A denial by the Court of Criminal Appeals of a state habeas application without written order is an adjudication on the merits where, as here, a procedural ground for denying the application does not appear in the state habeas record. See Miller, 200 F.3d at 281; Singleton v. Johnson, 178 F.3d 381, 384 (5th Cir.1999); Jackson, 150 F.3d at 524; Green, 116 F.3d at 1121.
To the extent state law questions are raised, this court is required to accord due *718 deference to the state courts' interpretation of state law. See Weeks, 55 F.3d at 1063; McKay, 12 F.3d at 69; Reddix, 805 F.2d at 511; Moreno, 717 F.2d at 179. "`[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Emery, 139 F.3d at 198 (quoting Estelle, 502 U.S. at 67-68, 112 S.Ct. 475); accord Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir.), cert. denied, 527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999). Claims challenging a state court's application of state law are outside the scope of federal habeas review. See Nobles, 127 F.3d at 419 n. 21; Pemberton v. Collins, 991 F.2d 1218, 1223 (5th Cir.), cert. denied, 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993).
The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), precludes federal courts from granting habeas corpus relief to state prisoners with respect to any claim that was adjudicated on the merits in a state court proceeding, unless one of two express requirements is satisfied. The statute provides, in relevant part:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim 
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). While "[t]he message that Congress intended to convey by using the phrases, `contrary to' and `unreasonable application of' is not entirely clear," the Supreme Court is of the view that "the text is fairly read simply as a command that a federal court not issue the habeas writ unless the state court was wrong as a matter of law or unreasonable in its application of law in a given case." Williams, 529 U.S. at 385, 120 S.Ct. 1495. The "AEDPA plainly sought to ensure a level of `deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Id. at 386, 120 S.Ct. 1495 (quoting H.R. CONF. REP. No. 104-518, p. 111 (1996)). Thus, by enacting the AEDPA, "it seems clear that Congress intended federal judges to attend with the utmost care to state-court decisions, including all of the reasons supporting their decisions, before concluding that those proceedings were infected by constitutional error sufficiently serious to warrant the issuance of the writ." Id.
Under the circumstances presented here, this court is bound by the state courts' decisions, as they are neither contrary to nor involve an unreasonable application of clearly established federal law as determined by the Supreme Court, nor are they based on an unreasonable determination of the facts in light of the evidence presented. Therefore, the state courts' denial of habeas corpus relief to Rose must stand.
Accordingly, Johnson's motion for summary judgment is granted, Rose's petition for writ of habeas corpus and motion for summary judgment are denied, and a certificate of appealability shall not issue. Rose has failed to present a claim upon which relief can be granted. There are no outstanding issues of material fact, and *719 Johnson is entitled to judgment as a matter of law.
IT IS SO ORDERED.

FINAL JUDGMENT
1. In accordance with this court's Memorandum and Order signed March 26, 2001, Nathan Lynn Rose's Petition for Writ of Habeas Corpus is denied.
2. Final Judgment is entered for Gary L. Johnson.
3. A Certificate of Appealability shall not issue.